EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ramiro Colón Muñoz, et al.<br><br>Peticionario<br><br>v.<br><br>Lotería de Puerto Rico, et al.<br><br>Recurridos | Certiorari<br><br>2006 TSPR 65<br><br>167 DPR _____ |

Número del Caso: CC-2005-220
          Cons. CC-2003-553

Fecha: 20 de abril de 2006

CC-2003-553

Tribunal de Apelaciones:

                    Circuito Regional I San Juan

Jueza Ponente:

                    Hon. Liana Fiol Matta

CC-2005-220

Tribunal de Apelaciones:

                    Región Judicial de Ponce

Jueza Ponente:

                    Hon. Zaida Hernández Torres

Abogado de la Parte Recurrida:

                    Lcdo. Antonio Zapater Cajigas

Abogados de la Parte Peticionaria

                    Lcdo. Ramón E. Dapena
                    Lcdo. Javier López Pérez
                    Lcdo. Víctor J. Quiñones

CC-2003-553

Materia: Daños y Perjuicios, billete de la Lotería Extraviado y pago
        indebido de los mismos.

CC-2005-220

Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo
que está sujeto a los cambios y correcciones del proceso de
compilación y publicación oficial de las decisiones del Tribunal. Su
distribución electrónica se hace como un servicio público a la
comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramiro Colón Muñoz, et al.

      Peticionario

        v.

Lotería de Puerto Rico, et al.        CC-2005-220

      Recurridos        Cons.CC-2003-553

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 20 de abril de 2006.

Los peticionarios acuden ante esta Curia mediante sendos recursos de *certiorari*. Solicitan la revocación de dos sentencias dictadas por el Tribunal de Apelaciones. El foro intermedio apelativo confirmó un dictamen del Tribunal de Primera Instancia que a su vez desestimó una acción de daños y perjuicios por pago indebido de billetes de lotería extraviados presentada por los peticionarios en contra de la Lotería de Puerto Rico. Dicho foro revocó otra sentencia emitida por el Tribunal de Primera Instancia mediante la cual declaró con lugar otra acción de reivindicación y cobro indebido del premio de unos billetes de la

Lotería de Puerto Rico, reportados extraviados, presentada por el peticionario en contra de la persona que cobro el premio de los referidos billetes. Por tratarse de pleitos que envuelven cuestiones comunes de hechos y de derecho, ordenamos su consolidación. Veamos los hechos de cada caso por separado.

I

**CC-2003-553**
**Ramiro Colón Muñoz, et el. V. Lotería de Puerto Rico**

El 15 de septiembre de 1998, el peticionario, señor Ramiro Colón Muñoz, otorgó una declaración jurada informando que extravió los billetes de la Lotería número 20613, series B y D, correspondientes al sorteo extraordinario a celebrarse el 16 de septiembre de 1998. Dicha declaración jurada alegadamente fue enviada por facsímil a las oficinas de la Lotería de Puerto Rico, en adelante la Lotería, el mismo día de haber sido otorgada. El señor Colón Muñoz solicitó que se paralizara el pago del premio correspondiente, en caso que resultaran premiados los billetes extraviados.[1]

Surge de nuestro expediente, que los billetes reportados como extraviados por el señor Colón Muñoz, resultaron premiados en el sorteo realizado el 16 de septiembre de 1998. Sin embargo, la Lotería se negó a aceptar la solicitud del señor Colón Muñoz, comprendida en la declaración jurada, porque alegadamente no se había presentado veinticuatro (24) horas antes del sorteo, tal como requiere la Ley de la

---

[1] Apéndice del recurso de <u>Certiorari</u> núm. CC-2003-553, págs. 1-2 y 152.

Lotería de Puerto Rico[2], pues alegadamente se recibió el mismo día del sorteo, a las 7:55 de la mañana.[3]

El 18 de septiembre de 1998, en horas de la tarde, el aquí peticionario, señor Colón Muñoz, presentó una demanda y una "Solicitud Urgente de Remedio Provisional" ante el Tribunal de Primera Instancia, Sala Superior de San Juan, solicitando la paralización del pago por la Lotería, por concepto de los billetes premiados en el sorteo celebrado el día 16 de septiembre de 1998.[4] El allí demandante, señor Colón Muñoz, alega que el 18 de septiembre de 1998, el Tribunal de Primera Instancia, Sala Superior de San Juan, emitió una "Orden de Remedio Provisional", firmada por el honorable José M. Lorié Velasco, Juez Superior, requiriendo y ordenándole a la Lotería que paralizara inmediatamente el cobro del cheque emitido para cubrir los premios de los billetes número 20613, series B y D del referido sorteo.[5] Alegó, además, que dicha "orden" se le envió a la Lotería y que ésta no ordenó la paralización del pago sino que emitió los cheques y realizó el pago en el Centro de Cambio de la propia Lotería en Hato Rey.[6] Posteriormente, el 1 de octubre

---

[2] Ley Núm. 465 de 15 de mayo de 1947, según enmendada, 15 L.P.R.A. secs. 111 et seq.

[3] Apéndice del recurso de Certiorari núm. CC-2003-553, págs. 4 y 152.

[4] A este caso se le asignó el número KPE98-0843 (907).

[5] Apéndice del recurso de Certiorari núm. CC-2003-553, págs. 152-153.

[6] Íd., págs. 20-22, 153.

de 1998, otro juez del Tribunal de Primera Instancia, honorable Carmen Rita Vélez Borrás, Juez Superior, emitió una orden, alegadamente la segunda en el caso, concediéndole a la Lotería un plazo de cinco (5) días para que expresara su posición. El demandante alegó que esta orden no contradecía en nada la supuesta "Orden de Remedio Provisional" emitida el 18 de septiembre de 1998.

Después de notificada la orden del 1 de octubre de 1998, el 8 de octubre de 1998, el demandante desistió sin perjuicio de su acción y el Tribunal de Primera Instancia, Sala Superior de San Juan, dictó sentencia de conformidad el 14 de octubre de 1998.[7] El 14 de septiembre de 1999, casi un año después, el señor Colón Muñoz presentó en el Tribunal de Primera Instancia, Sala Superior de San Juan, una demanda en daños y perjuicios por el pago indebido del importe del premio de los referidos billetes de lotería.[8] La Lotería solicitó la desestimación del caso por falta de parte indispensable, refiriéndose a la persona tenedora de los billetes premiados, señora Digna Rodríguez Colón, a quien el señor Ramiro Colón Muñoz había demandado en un pleito separado, presentado en el Tribunal de Primera Instancia, Sala Superior de Ponce, reclamando el pago del premio.[9] Por su parte, el demandante solicitó la consolidación de ambos casos. El Tribunal de Primera Instancia, Sala Superior de San

---

[7] Íd. pág. 19.

[8] Íd. págs. 20-22.

[9] Íd. págs. 31-34, 58 y 153.

Juan, accedió a tal solicitud y ordenó la consolidación del caso, trasladándolo al Tribunal de Primera Instancia, Sala Superior de Ponce.[10] Esta orden fue dejada sin efecto por el Tribunal de Primera Instancia, Sala Superior de Ponce. Dicho tribunal determinó, que por tener ambos casos controversias y cuestiones de derecho distintas, y por tratarse de un asunto discrecional, ordenaba la devolución del caso en contra de la Lotería a la Sala Superior de San Juan. Dos años después, el caso fue devuelto a San Juan, continuando así ambos procesos, de forma separada.[11]

El 6 de noviembre de 2002, la Lotería solicitó nuevamente la desestimación de la demanda presentada en su contra, por falta de parte indispensable y porque al presentar la demanda el 14 de septiembre 1999, la acción de los demandados alegadamente ya había caducado, pues se había presentado fuera del término que establece el artículo 12 de la Ley de la Lotería[12], el cual dispone que los billetes de la lotería son valores al portador, por lo que sólo se reconoce como dueño a la persona que los presente para su cobro dentro de los seis (6) meses después de celebrado el sorteo.[13] El demandante se opuso a la desestimación, alegando que el pago de los premios se hizo en contravención a la orden de paralización dictada por el Tribunal de Primera

---

[10] Íd. págs. 59 y 153.

[11] Íd.

[12] 15 L.P.R.A sec.120.

[13] Apéndice del recurso de <u>Certiorari</u> núm. CC-2003-553, págs. 43-49, 59-60 y 154.

Instancia, el 18 de septiembre de 1998. Arguyó, además, que su reclamación no se basaba en el artículo 12 de la Ley de la Lotería, *supra*, sino en la figura del pago de lo indebido, ya que la Lotería había pagado el premio de los billetes a pesar de que se le había notificado sobre su extravío y además, en contravención a la orden de paralización, emitida por el foro de primera instancia el 18 de septiembre de 1998.

El 31 de enero de 2003, el Tribunal de Primera Instancia dictó sentencia, desestimando la demanda bajo la Regla 10.2 (5) de Procedimiento Civil.[14] Determinó que, para la fecha en que la Lotería pagó el premio, es decir en o antes del 2 de octubre de 1998[15], no se había dictado la "orden de paralización" que según el demandante, había dictado el foro primario el 18 de septiembre de 1998, en el caso KPE98-0843. La sala sentenciadora concluyó lo siguiente:

> No tienen razón los demandantes, cuando la Lotería de Puerto Rico hace el pago del billete de la Lotería 20613, series B y D, sorteo 378-X celebrado el 16 de septiembre de 1998, en o antes del 2 de octubre de 1998, (véase certificación de la Lcda. Grace N. Grana, Directora Auxiliar de la Lotería de Puerto Rico), no se había dictado orden por el Tribunal en el caso KPE 98-0843 requiriendo la paralización inmediata del pago, sino que la orden que se había dictado fue la que transcribimos anteriormente la cual no ordena

---

[14] 32 L.P.R.A. Ap. III R. 10.2 (5).

[15] Esta fecha surge de la certificación expedida por la Directora Auxiliar de la Lotería de Puerto Rico, licenciada Grace M. Grana, con fecha de 2 de octubre de 1998 y en la que hace constar que el Centro de Cambio de Hato Rey informó que el billete de lotería 20613, series B y D, perteneciente al sorteo del 16 de septiembre de 1998, fue pagado en su totalidad a la señora Digna Rodríguez Colón, residente de la calle Acertillo 639, Los Caobos, Ponce, Puerto Rico.

la paralización[16]. Además dicha orden debía ser notificada a la Lotería por los demandantes y en el expediente del caso no hay constancia de que así se hiciera, lo que hay es un aviso de desistimiento.[17] Cuando se dicta la orden en el caso KPE 98-0843, el billete premiado había sido pagado a la Sra. Digna Rodríguez Colón parte demandada en el caso de Ponce.

Inconforme con tal determinación, la parte demandante presentó recurso de apelación ante el entonces Tribunal de Circuito de Apelaciones. El allí apelante, señor Colón Muñoz, alegó que erró el Tribunal de Primera Instancia al no tomar conocimiento de la orden expedida por el Tribunal el 18 de septiembre de 1998, en el mismo caso, la cual requería la paralización inmediata del pago por concepto del premio de los billetes. Los apelados, por conducto del Procurador General, adujeron que en el expediente del caso ante el foro de primera instancia, no había evidencia del diligenciamiento de la referida orden y que tampoco surgía de éste que se les hubiese notificado a los apelados la demanda, la solicitud de remedio provisional y la orden emitida el 1 de octubre de

---

[16] Esta orden fue emitida el 1 de octubre de 1998. Se ordenó a la parte demandada que compareciera en el plazo improrrogable de cinco (5) días para expresar su posición con relación a los planteamientos de la parte demandante.

[17] La orden del 1 de octubre de 1998 ordenaba a la parte demandante lo siguiente:

> La parte demandante notificará a la parte demandada a tenor con lo dispuesto en las Reglas 57.1 y 4.4 de las de Procedimiento Civil, entregándole copia de la presente, de la demanda y de la solicitud de remedio provisional que presentó en el caso de epígrafe.

1998.[18] También señalaron, que al efectuarse el pago del premio, la causa de acción advino académica debido a que no existe cuando la suma solicitada no se debe.[19] Además, añadió el Procurador, que por ser los billetes de lotería valores al portador, la Lotería está obligada a pagar los premios correspondientes cuando el tenedor se lo requiera, a menos que se cumpla con lo que indica la Ley de la Lotería, *supra*, para los casos de billetes extraviados o de que exista una orden de paralización expedida por un tribunal competente. Concluyó que no habiendo actuado la parte apelante conforme a la ley, ni existiendo notificación de orden de paralización, "el Estado Libre Asociado de Puerto Rico estaba obligado a pagar el importe de los billetes objeto de esta controversia a su portador y no incurrió en responsabilidad al así hacerlo".[20]

El entonces Tribunal de Circuito de Apelaciones emitió sentencia el 30 de mayo de 2003, archivada en autos copia de su notificación a las partes el 11 de junio de 2003, en la cual confirmó la sentencia apelada. Ante la controversia que gira en torno a la alegada "orden de paralización" del 18 de septiembre de 1998, el foro intermedio apelativo examinó los autos originales del caso y determinó lo siguiente:

> (...)Nuestro examen reveló que no hay en ese expediente orden de paralización alguna firmada

---

[18] Apéndice del recurso de Certiorari núm. CC-2003-553, pág. 155.

[19] Íd., págs. 145 y 155.

[20] Íd., pág. 156.

> por el Juez Lorié Velasco ni notificada a parte alguna. La única orden firmada y certificada es la expedida por la Jueza Vélez Borrás el 1 de octubre de 1998, que fue certificada por la Secretaria General y notificada el 6 de octubre de 1998[21] a los abogados de la parte apelante. No hay constancia de notificación a los apelados, ni de esta orden ni de la demanda o solicitud de remedio provisional, previo a la presentación del aviso de desistimiento fechado 6 de octubre de 1998.
>
> Lo que sí aparece en el expediente de instancia son varias copias de un proyecto de "orden de remedio provisional", idéntico en contenido y formato al documento incluido en el apéndice del apelante, pero sin fecha, sin número de caso, sin firma de juez y ciertamente, sin constancia alguna de notificación. De esa forma, el expediente no acredita que se hubiera expedido orden de paralización alguna en el caso KPE 98-0843. No erró el Tribunal de Primera Instancia en su apreciación.[22]

Concluyó el referido foro judicial, que no habiendo el allí apelante, señor Ramiro Colón, demostrado que informó a la Lotería sobre el extravío de los billetes y que solicitó la paralización del pago dentro del término establecido por la Ley de la Lotería, *supra,* no erró el foro de primera instancia al desestimar la causa de acción por académica.

Inconforme con la decisión del entonces Tribunal de Circuito de Apelaciones, el 11 de julio de 2003, el allí apelante, señor Colón Muñoz, acude ante nos mediante el presente recurso de *Certiorari*, señalando la comisión de los errores siguientes:

---

[21] Surge del expediente, del boleto de notificación expedido por el Tribunal de Primera Instancia, que dicha orden del 1 de octubre de 1998 fue notificada el 5 de octubre de 1998.

[22] Íd., pág. 158.

I.   Incidió el Honorable Tribunal de Circuito
     de Apelaciones al confirmar la sentencia
     del Tribunal de Instancia que desestimó la
     causa de acción de la parte demandante al
     resolver, que una orden emitida por un
     tribunal con competencia por conducto del
     Honorable Juez José M. Lorié Velasco,
     ordenándole a la Lotería de Puerto Rico la
     paralización inmediata del pago de los
     billetes en cuestión, carece de
     credibilidad por el hecho de no constar
     copia de la misma en el expediente del
     Tribunal que emitió la orden.

II.  Incidió el Honorable Tribunal de Circuito
     de Apelaciones al confirmar la sentencia
     del Tribunal de Instancia, el cual
     desestimó bajo la Regla 10.2 (5) de las de
     Procedimiento Civil sin tomar como ciertas
     todas las alegaciones en la demanda, donde
     se especifica la existencia de la orden de
     paralización del pago del premio de los
     billetes emitida por el Honorable Juez
     José M. Lorié Velasco el 18 de septiembre
     de 1998.

## CC-2005-220
## Ramiro Colón Muñoz, et el. V. Digna Rodríguez Colón

El 9 de octubre de 1998, un día después de haber desistido del pleito en contra de la Lotería[23], el señor Ramiro Colón Muñoz presentó ante el Tribunal de Primera Instancia, Sala Superior de Ponce, una demanda sobre billetes de lotería extraviados, cobro indebido de los mismos, reivindicación, y daños y perjuicios, en contra de la señora Digna Rodríguez Colón. Alegó haber comprado el billete de la lotería 20613, series B y D (dupleta), para el sorteo extraordinario de la Lotería de Puerto Rico, a ser celebrado

---

[23] El peticionario desistió del pleito en contra de la Lotería el 8 de octubre de 1998. Presentó el 14 de septiembre de 1999 una acción de daños y perjuicios contra la Lotería.

el 16 de septiembre de 1998, y que el mismo se le había perdido, por lo cual prestó declaración jurada el 15 de septiembre de 1998, haciendo constar dicha perdida.[24] También expuso que hizo gestiones ante la Lotería de Puerto Rico para notificar la pérdida de los billetes; que el Tribunal de Primera Instancia, Sala Superior de San Juan, emitió una orden que requería la paralización del pago ("stop payment"), y aún así, ésta satisfizo el premio a la parte allí demandada.[25]

En su escrito de contestación a la demanda, la señora Rodríguez Colón expuso que adquirió la dupleta en cuestión de una persona autorizada por el Negociado de la Lotería de Puerto Rico para actuar como vendedor de billetes, quien posee la licencia número V-7232 que le fue expedida a esos efectos.[26] Además, reconvino al señor Colón Muñoz por daños y perjuicios, por alegados sufrimientos mentales y físicos.

El primer día del juicio, el 1 de octubre de 2003, declaró el señor Ramón Muñiz Santiago. Testificó que era Fiscal Auxiliar II, adscrito a la Fiscalía de Bayamón y que investigó una querella sometida por el señor Ramiro Colón Muñoz, respecto a un incidente ocurrido para el año 1997 y principios del 1998.[27] Con relación a este incidente, expresó

---

[24] Apéndice del recurso de <u>Certiorari</u> núm. CC-2005-220, págs. 66 y 67.

[25] Íd., págs. 17, 66-67.

[26] Íd., pág. 69.

[27] Transcripción oficial de procedimientos del caso CC-2005-220, en adelante T.O.P., págs. 4-5.

que el señor Colón Muñoz le indicó que se había estacionado en la tienda Sam´s Club en Ponce, que había dejado estacionado su carro con las ventanas abiertas y que luego de entrar a dicho establecimiento comercial, regresa a su carro y se va.[28]   Añade, que el señor Colón Muñoz, al día siguiente, se percata de que uno o los dos billetes de la Lotería que había dejado en la gaveta de su vehículo no estaban.[29] También declaró que citó a varios testigos y que, luego de entrevistarlos y de ver la evidencia, encontró que no había suficientes elementos que indicaran la comisión de un delito.[30]

El licenciado Francisco Delgado Martínez, quien tomó la declaración jurada del señor Colón Muñoz el 15 de septiembre de 1998, declaró que cuando éste llegó a su oficina, le indicó que el 14 de septiembre de 1998 había comprado unos billetes de lotería en Ponce, números 18422 y 20613, y que se le habían desaparecido del vehículo en el que andaba el día que los compró.[31] Continuó declarando que el señor Colón Muñoz le informó que llamó a su esposa y ésta verificó las series de dichos billetes comprados en Ponce, con la señora que se los había vendido a él.[32] Añadió, que además le indicó

---

[28] Íd., pág. 6.

[29] Íd.

[30] Íd.

[31] Íd., págs. 12-13.

[32] Íd., pág. 13.

el número de cheque de una cuenta personal del Banco Santander con el que había pagado los billetes.[33]   Expresó que cuando se prestó la declaración jurada, se hizo constar en la misma que los números y series de los billetes eran el 18422, series A y B, y el 20613, series B y D, que el cheque con el que pagó los billetes era el número 877 del Banco Santander y que tenía fecha del 14 de septiembre de 1998. La secretaria del licenciado Delgado Martínez, señora Iris Ofelia Torres Ríos, testificó que la declaración jurada se envió vía facsímil a la Lotería de Puerto Rico el mismo 15 de septiembre de 1998, porque el sorteo era al día siguiente.[34]

El juicio continuó con el testimonio de la señora Hilda Ramos Maldonado, quien dirigía para esa fecha la Lotería Tradicional de Puerto Rico.[35]  Durante su testimonio, se admitió como evidencia un documento que obra en el expediente de la Lotería, que consiste de una comunicación con fecha del 18 de septiembre de 1998, enviada por el representante legal del señor Colón Muñoz a la licenciada Grace M. Grana, Directora Auxiliar de la Lotería. La misma contenía como anejo una Orden de Remedio Provisional emitida ese mismo día por el honorable José M. Lorié Velasco, Juez Superior.[36] Además, ambas páginas del documento admitido como exhibit evidencian marcas electrónicas en su parte superior, las cuales indican, según admitió la señora Ramos Maldonado, que

---

[33] Íd.

[34] Íd., pág. 29.

[35] Íd., pág. 38.

[36] Apéndice del recurso de Certiorari núm. CC-2005-220, pág. 17.

el facsímil fue recibido en la Lotería el 18 de septiembre de 1998 a las "19:17", o sea a las 7:17 p.m. y que provenía de Goldman Antonetti & Córdova, bufete donde trabaja el representante legal del demandante.[37] Durante este testimonio, también surgió que al dorso de la página del referido exhibit aparece lo siguiente: "M. Galarza, 24 de septiembre de 1998, y 9:25 a.m.". La testigo expresó que se trataba de Madeline Galarza, secretaria de reclamaciones.[38] Respecto a este punto, el Tribunal de Primera Instancia determinó que lo que indicaba esta información al dorso del documento, era que la Lotería acusó recibo del original, entiéndase que se refiere a la Orden de Remedio Provisional, el día 24 de septiembre de 1998, y no del facsímil del 18 de septiembre de 1998. Además, determinó, como cuestión de hecho, lo siguiente:

> Evidentemente, el demandante envió la orden del Juez Lorié por facsímil [el 18 de septiembre de 1998] y luego el original por correo ordinario que se recibió luego del fin de semana y del paso del Huracán Georges. (A los propósitos de establecer la existencia para dichas fechas del fenómeno atmosférico, el demandante ofreció, y se admitieron como evidencia, las órdenes administrativas emitidas por el Tribunal Supremo de Puerto Rico en relación al Huracán Georges: 98 JTS 129, [...] y 98 JTS 122.)[39]

El desfile de prueba continuó con el testimonio de la licenciada Grace Grana Martínez, quien declaró que para el mes de septiembre de 1998, era Directora Auxiliar de la

---

[37] Íd., págs. 17-18; T.O.P., pág. 43.

[38] Íd., pág. 18; Íd., pág. 46.

[39] Apéndice del recurso de Certiorari núm. CC-2005-220, pág. 18.

Lotería Tradicional de Puerto Rico.[40] Declaró que el día del sorteo, miércoles 16 de septiembre de 1998, obraba en la Lotería la declaración jurada del señor Colón Muñoz, documento recibido por facsímil y registrado a las 7:55 de la mañana de ese mismo día. Señaló que toda la documentación relacionada al caso, la vio el mismo día del sorteo.[41] También expresó que no recordaba que le hubiesen notificado por facsímil el día antes del sorteo.[42]

El señor Colón Muñoz y su esposa acudieron a la Lotería el 18 de septiembre de 1998 y fueron recibidos por la licenciada Grana. Solicitaron se detuviera el pago de los billetes premiados ya que él lo había comprado y se le había extraviado. La licenciada Grana le explicó que para solicitar la paralización del pago, necesitaba una orden judicial; y que además le dio copia de la ley y el Reglamento de la Lotería.[43] La licenciada Grana expresó que lo próximo que supo del señor Ramiro Colón fue que ese viernes 18 de septiembre de 1998 en la noche, como a las 9:00, recibió una llamada en su casa, informándole que había obtenido una orden

---

[40] T.O.P., pág. 48.

[41] Íd., pág. 57.

[42] Íd., págs. 57-58.

[43] Íd., págs. 50-51; Apéndice del recurso de Certiorari núm. CC-2005-220, págs. 18 -19; además, véase Carta de la licenciada Grace Grana, enviada al licenciado Dapena (abogado del demandante) el 24 de diciembre de 1998, admitida como exhibit E de la parte demandada.

del Tribunal, ordenando que se paralizara el pago y que la había enviado vía facsímil.[44]

El 21 de septiembre de 1998, el huracán Georges azotó a Puerto Rico. En vista de la situación de emergencia surgida por el huracán, surge de la Resolución del 25 de septiembre de 1998 del Tribunal Supremo[45], que la Rama Judicial había decretado la suspensión de los trabajos ordinarios desde el 21 de septiembre de 1998. La licenciada Grana hizo referencia a la suspensión de labores debido al huracán y que fue para el día 23 de septiembre de 1998 que tuvo la oportunidad de ver la orden de remedio provisional y los otros documentos.[46] Testificó que ese 23 de septiembre de 1998, recibió una llamada del señor Ramiro Colón Muñoz a su teléfono celular, solicitándole que paralizaran el pago de los billetes premiados.[47] Ella le indicó que no podía hacerlo hasta que no le presentaran copia de la orden dictada por el tribunal. En el juicio testificó que recibió copia de la orden el 25 de septiembre de 1998 y que recordaba que había un "issue" con el sello en la orden.[48] Respecto a este asunto de la orden y del sello, en una comunicación firmada por ella, dirigida al

---

[44] T.O.P., pág. 54.

[45] *In re*: Medidas Judiciales para Atender Emergencias Causadas por el Huracán Georges, 146 D.P.R. 711 (1998).

[46] T.O.P., págs. 60, 64.

[47] Íd., pág. 65.

[48] Íd.

licenciado Dapena, representante legal del señor Colón Muñoz,

y con fecha del 24 de diciembre de 1998, dice lo siguiente:

> ...el viernes, 25 de septiembre, recibimos el
> original de la Orden de Remedio Provisional
> emitida por el Honorable José M. Lorie [sic]
> Velazco [sic], Juez Superior del Tribunal de
> Primera Instancia, Sala Superior de San Juan.
> Por motivo del paso del huracán Georges, los
> Tribunales de Puerto Rico se encontraban
> cerrados, lo que explica la falta del sello y
> certificación de la Secretaría del Tribunal en
> la Orden recibida. Sin embargo, la Lotería de
> Puerto Rico ante la situación ocasionada por el
> Huracán y al amparo de la Regla 65.3 de la
> Reglas de Procedimiento Civil de Puerto Rico de
> 1979, ese mismo día se dio por notificada y
> procedió a cumplir la misma.[49]

También declaró la señora Nilsa I. Fernández Vargas,

quien le vendió los billetes de lotería al señor Colón Muñoz.

Los billetes que vendía se los proveía su ex esposo, señor

Edwin Rodríguez Torres. Relató que para el año 1998 atendía

el puesto número 100 en la Plaza del Mercado de Ponce, donde

le vendió al señor Ramiro Colón Muñoz dos dupletas de

lotería, pero que no le vendió la número 20613, sino los

números 18422 y 19113.[50] Alegó que el billete número 20613 no

se lo vendió al demandante porque el día 14 de septiembre de

1998 por la tarde, su ex suegro, señor José Pérez Feliciano

vio en la vitrina del puesto esa dupleta y decidió llevársela

para venderla al día siguiente.[51]

---

[49] Carta de la licenciada Grace Grana, enviada al licenciado
Dapena (abogado del demandante) el 24 de diciembre de 1998,
admitida como exhibit E de la parte demandada.

[50] T.O.P., pág. 105; Apéndice del recurso de _Certiorari_ núm.
CC-2005-220, pág. 145.

[51] Apéndice del recurso de _Certiorari_ núm. CC-2005-220, págs.
20-21.

El desfile de la prueba testifical continuó con el testimonio del señor José Pérez Feliciano. Declaró que el día antes del sorteo, 15 de septiembre de 1998, fue a cobrarle a doña Digna Fernández Vargas una cuenta de ciento cuarenta dólares ($140.00), pues era su clienta de muchos años; y que ese día, le enseñó los billetes que tenía y ella le pagó lo que debía y le compró el billete número 20613, series B y D.[52] Expresó que doña Digna Fernández Vargas le pagó en efectivo.[53] También declaró, que luego del sorteo, doña Digna Fernández Vargas le entregó un cheque de dos mil dólares ($2,000.00) el 10 de octubre de 1998 y uno de ocho mil dólares ($8,000) el 24 de octubre del mismo año; o sea, diez mil dólares ($10,000.00) en el mes de octubre y que de éstos le dio siete mil doscientos ($7,200.00) a Edwin Rodríguez, ex esposo de la billetera, señora Nilsa Fernández Vargas.[54]

El 10 de marzo de 2004, el Tribunal de Primera Instancia, Sala Superior de Ponce, dictó sentencia declarando con lugar la demanda sobre billetes de la lotería extraviados, presentada por el señor Ramiro Colón Muñoz, su esposa, señora Georgina Ortiz Dexter de Colón, así como la Sociedad Legal de Gananciales compuesta por ambos, concediendo daños y perjuicios. El foro sentenciador formuló, en lo pertinente, las determinaciones de hecho siguientes:

---

[52] T.O.P., págs. 130-133,141.

[53] Íd., pág. 132.

[54] Íd., págs. 137-139, 141, 143-144. Véase Exhibits A y B de la parte demandada.

1. El demandante Ramiro Colón Muñoz ha sido comprador de billetes de la Lotería Tradicional por muchos años.

2. **El lunes 14 de septiembre de 1998**, el demandante acudió al puesto de billetes #100 en la Plaza del Mercado de Ponce, atendido por la Sra. Fernández, y **compró dos "dupletas" de la Lotería para el sorteo extraordinario a celebrarse el 16 de septiembre de 1998.**

3. El demandante guardó las dupletas en el bolsillo trasero de su pantalón y se dirigió a su vehículo marca Ford, colocando los billetes en la guantera del automóvil.

4. El demandante se dirigió entonces a Sam´s Club de Ponce, estacionó su vehículo en el estacionamiento, y se dirigió al centro comercial.

5. El **martes 15 de septiembre** el demandante salió temprano para una finca de su propiedad localizada en el Municipio de Jayuya. **Tarde en la mañana, buscó los billetes comprados el día anterior y no los encontró.**

[........]

16. **Ese mismo 15 de septiembre de 1998 temprano en la tarde, el día antes del sorteo, el demandante llegó a las oficinas del Lcdo. Delgado.**

17. **El Lcdo. Delgado recogió la información suministrada por el demandante, y redactó la declaración jurada del demandante, en la que identificó las dupletas perdidas como la 18422, series A y B, y la 20613, series B y D.**

[........]

20. **El facsímil con la declaración jurada sobre el extravío de los billetes y la hoja de trámite llegó a la Lotería el mismo 15 de septiembre de 1998, después que personal de la Lotería había terminado el día de trabajo.**

21. **El 16 de septiembre de 1998, la Lotería celebró el sorteo extraordinario, resultando agraciado con el primer premio el número 20613, a las 7:01 de la mañana. No fue sino hasta las 7:55 a.m. que personal de la Lotería se percató de que había un facsímil en la bandeja de la**

**máquina que había llegado en la tarde del día anterior y que incluía la declaración jurada del demandante a los efectos de que se le habían extraviado las dos dupletas.**

22. La demandada fue la persona que reclamó y cobró el primer premio de la Lotería Extraordinaria celebrada el 16 de septiembre de 1998, que resultó ser el 20613.

23. El premio por cada serie fue $1,000,000.00. Las series en posesión de la demandada al momento de reclamar el premio eran las B y D, las mismas reportadas como extraviadas por el demandante el 15 de septiembre de 1998.

24. **La demandada cobró el premio por ambas series del 20613, la B y D, para un total de $2,000,000.00, el 17 de septiembre de 1998.**

25. El 17 de septiembre de 1998, el demandante se enteró de que el número reportado extraviado, el 20613, había resultado ganador del primer premio de la Lotería del 16 de septiembre de 1998. Acto seguido, llamó por teléfono a la Lotería para advertir sobre el envío de la declaración jurada el 15 de septiembre de 1998, y solicitar la paralización del pago del premio.

26. El 18 de septiembre de 1998, el demandante se personó a las oficinas de la Lotería en San Juan, para indagar sobre su reclamación y exigir la paralización del premio.

27. En dicha vista, la Directora Auxiliar de la Lotería Grace Grana le informó al demandante que como la declaración jurada no fue notificada 24 horas antes del sorteo, la única manera que la Lotería podía paralizar el pago del cheque correspondiente al premio era a través de una orden judicial. No le informó que la demandada ya había cobrado el cheque correspondiente al premio el 17 de septiembre de 1998.

28. El demandante acudió ese mismo 18 de septiembre de 1998 al Tribunal de Primera Instancia, Sala de San Juan, y obtuvo una orden judicial del Honorable Juez José Lorié Velasco en la que le ordena a la Lotería detener el pago del cheque correspondiente al pago del premio de la dupleta 20613.

29. El demandante envió, ese mismo 18 de septiembre de 1998, la orden judicial por facsímil, a la Lotería. La orden fue recibida en la Lotería a las 7:17 p.m.

30. **Los actos del demandante anteriores y posteriores al sorteo del 16 de septiembre de 1998 son todos consistentes con adquisición, titularidad y derecho a la dupleta 20613 y al premio.**

31. **La demandada no ofreció prueba demostrativa de que pagó la dupleta 20613 al billetero, Sr. Pérez. Por el contrario, el testimonio y prueba creíble establece que la demandada no adquirió en plaza (no pagó) la dupleta 20613; que su titularidad, si alguna, es en calidad de testaferro pues, allí donde es menester declarar título, por obligación de ley, no lo hizo.**

32. El agente de la Lotería que le suplía los billetes a la Sra. Fernández y al Sr. Pérez es el Sr. Edwin Rodríguez, y es a éste a quienes ambos le pagan los billetes que venden.

33. El Sr. Rodríguez le suplió para venta el billete 20613, series B y D, a la Sra. Fernández, quien es su ex-esposa, y la que le vendió dos dupletas al demandante el 14 de septiembre de 1998.

34. La dupleta 20613 estaba disponible a la venta en el puesto #100 el 14 de septiembre de 1998.

35. El Sr. Pérez, vendedor de billetes también es suplido por el agente Edwin Rodríguez, quien es su hijastro.

36. La demandada le obsequió $2,000.00 al Sr. Pérez un día después de ser emplazada con la demandada en el pleito de epígrafe, casi un mes después de cobrar el premio. Le obsequió $8,000.00 semanas después.

37. El billetero, Sr. Pérez, le dio $7,200.00 al Sr. Edwin Rodríguez sin expectativa de recobro.

38. La demandada no produjo cheque alguno que refleje el pago de la dupleta 20613, series B y D, al Sr. Pérez, aún cuando declaró bajo

juramento en 2001, que siempre pagaba en cheque.

39. La demandada reportó en las planillas de contribución sobre ingresos de 1998 y 1999 que no recibió ingreso exento alguno de la Lotería durante esos años contributivos.

40. La demandada no informó, en sus planillas de contribución sobre ingresos, el producto derivado de los $2,000,000.00 de dólares cobrados en la Lotería el 17 de septiembre de 1998.

41. **La demandada no produjo prueba adicional de su alegado título y/o usufructo del premio, pudiendo producirla si es que es la verdadera titular.**

42. La demandada no aportó prueba pertinente que apoye la reconvención.
[........][55] (Énfasis suplido)


Siendo una controversia sobre reclamo de titularidad, el foro primario señaló que la Ley de la Lotería, *supra,* era inaplicable al reclamo del demandante. Puntualizó que la determinación sobre la titularidad sería una cuestión de evaluación y suficiencia de la prueba.

Evaluada toda la prueba presentada ante si, el foro sentenciador le impartió credibilidad a la prueba presentada por el demandante, señor Ramiro Colón Muñoz, y determinó, que éste compró el billete de lotería número 20613, series B y D, de un agente autorizado, y adquirió titularidad y el derecho dominical sobre los mismos.[56] Señaló que la demandada no produjo prueba que demostrara que advino titular de los

---

[55] Apéndice del recurso de <u>Certiorari</u> núm. CC-2005-220, págs. 29-33.

[56] Véase determinación de hecho número 30, citada en la página 20 de esta Opinión. Íd, pág. 31.

billetes premiados, y que los hechos del caso sí demuestran que no fue una adquirente de buena fe.[57] Además, determinó como conclusión de derecho, que el demandante podía reivindicar de la demandada el premio de los billetes premiados, en virtud del artículo 393 del Código Civil[58], y de la jurisprudencia que ha interpretado el mismo a la luz de controversias sobre billetes de lotería extraviados.

Resolvió que la demandada no estaba protegida por la doctrina de prescripción instantánea porque no ofreció prueba específica que convenciera al Tribunal de que, en efecto, compró los billetes premiados, por lo que no le aplicaba lo resuelto en González v. Coop. De Ahorro y Crédito[59].

El Tribunal de Primera Instancia le ordenó a la parte allí demandada, aquí recurrida, señora Rodríguez Colón, restituirle a la parte demandante, aquí peticionaria, el premio cobrado sobre la dupleta 20613, series B y D, así como su liquidación y los intereses producidos. Además, dispuso, que por la naturaleza fungible del dinero, y en lo que advenía final y firme la sentencia dictada, la parte demandada, aquí recurrida, debía someter informes mensuales sobre los dineros productos del premio cobrado sobre la dupleta 20613 e inversiones relacionadas. Por último, la parte allí demandada tenía que notificarle la sentencia a las

---

[57] Apéndice del recurso de Certiorari núm. CC-2005-220, pág. 38.

[58] 31 L.P.R.A. sec. 1479.

[59] 122 D.P.R. 1 (1988).

instituciones bancarias y otras similares donde obren los dineros, para el mejor gobierno de dichas partidas.[60]

Inconforme con tal dictamen, el 11 de mayo de 2004, la señora Digna Rodríguez Colón presentó recurso de apelación ante el Tribunal de Apelaciones. Alegó que incidió el foro primario al no aplicar al caso de autos la doctrina de prescripción instantánea establecida en el caso de González v. Coop. De Ahorro y Crédito, *supra*. Además, arguyó que erró el foro de primera instancia al apreciar y evaluar la prueba y dictar sentencia en su contra.

El 21 de mayo de 2004, el Tribunal de Apelaciones emitió una resolución ordenándole a la parte allí apelante, señora Digna Rodríguez Colón, que en el término de sesenta (60) días presentara copia de la transcripción de la prueba oral. Luego de varios trámites procesales y concesiones de prórrogas, el 26 de agosto de 2004, la allí apelante cumplió con esa orden y presentó copia de la transcripción de la vista del juicio en su fondo.

El Tribunal de Apelaciones dictó sentencia el 21 de diciembre de 2004, en la cual revocó la sentencia apelada y determinó que la señora Digna Rodríguez Colón es la dueña del premio de la dupleta 20613, series B y D. El foro intermedio apelativo entendió que, al apreciar toda la prueba, el Tribunal de Primera Instancia incidió al determinar que el señor Ramiro Colón Muñoz había cumplido con las formalidades

---

[60] Íd., págs. 40-41.

del artículo 10 de la Ley de la Lotería de Puerto Rico[61], y el artículo 56 del Reglamento para la Administración y Funcionamiento de la Lotería de Puerto Rico[62], vigentes al momento de los hechos y relacionados al procedimiento para reclamar billetes de lotería extraviados o robados. Esto debido a que el apelado no había presentado la declaración jurada dentro del término que requiere la ley (no menos de veinticuatro (24) horas antes del sorteo) y por no haber notificado al Cuartel de la Policía más cercano sobre el robo o apropiación ilegal de los billetes antes de enviar la declaración jurada por facsímil, y hacer constar en la misma el número de querella. Según el foro intermedio apelativo, surge del propio testimonio del señor Ramiro Colón Muñoz que no fue hasta que transcurrieron tres (3) días de haberse celebrado el sorteo y que se enterara que la dupleta en cuestión había sido premiada que él acude a la Policía a reportar el alegado extravío de los billetes.[63]

Concluyó el Tribunal de Apelaciones que erró el Tribunal de Primera Instancia al determinar que el señor Ramiro Colón Muñoz había cumplido con las formalidades del artículo 10 de la Lotería de Puerto Rico, *supra*, y así haberle dado curso a su reclamo. Además, concluyó que erró el foro sentenciador al despojar a la señora Digna Rodríguez Colón del premio de la

---

[61] 15 L.P.R.A. sec. 120.

[62] Reglamento aprobado el 31 de marzo de 1971, enmendado por el reglamento número 2099 aprobado el 2 de junio de 1976 y efectivo el 2 de julio de 1976.

[63] T.O.P., págs. 164, 173.

dupleta, pues los billetes de la lotería son considerados valores al portador, tal como dispone el artículo 12 de la Ley de la Lotería[64], por lo cual no se reconocerá otro dueño que aquella persona que lo posea y lo presente a su cobro. Uno de los jueces del panel de tres (3), disintió sin opinión escrita.

El señor Ramiro Colón Muñoz solicitó la reconsideración de tal dictamen, la cual fue declarada no ha lugar. Inconforme, presentó ante nos recurso de *certiorari*. Señaló como único error lo siguiente:

> **Incidió el Honorable Tribunal de Circuito de Apelaciones al revocar la sentencia dictada por el Tribunal de Instancia mediante la aplicación de la doctrina de prescripción instantánea a los hechos probados en el caso de marras, que es uno sobre titularidad del billete extraviado.**

El peticionario alega, ante nos, que los hechos determinados por el Tribunal de Primera Instancia establecen que reclamó la titularidad de los referidos billetes con anterioridad al sorteo, y que existe prueba preponderante de que los billetes premiados pertenecieron y estuvieron en su posesión antes del sorteo. Arguye que el Tribunal de Primera Instancia no dirimió, contrario a lo determinado por el Tribunal de Apelaciones, el incumplimiento del señor Colón Muñoz con el artículo 10 de la Ley de la lotería, *supra*, sino que dictaminó sobre la titularidad de los billetes en controversia. Señala, que la Ley de la Lotería, *supra*, como ha establecido nuestro ordenamiento, regula las relaciones

---

[64] 15 L.P.R.A. sec. 122.

jurídicas entre los jugadores de billetes y el Gobierno. Sostiene que tal norma estatutaria es inaplicable al reclamo del señor Ramiro Colón Muñoz contra la señora Digna Rodríguez Colón, relativo a la titularidad y al derecho dominical sobre los billetes de la lotería premiados.

II

El peticionario, en el caso CC-2003-553, señaló como errores cometidos por el Tribunal de Apelaciones, en síntesis, que incidió dicho foro al confirmar el dictamen del Tribunal de Primera Instancia, que desestimó la acción en contra de la Lotería, por dos razones: (1) desestimó sin impartirle credibilidad a la "orden de paralización" emitida por el honorable José Lorié Velasco, Juez Superior del Tribunal de Primera Instancia, Sala Superior de San Juan, y (2) desestimó la referida acción bajo la regla 10.2 (5) de Procedimiento Civil, *supra*, sin tomar como ciertas todas las alegaciones de la demanda, incluyendo la relativa a la existencia de la alegada "orden de paralización". Atenderemos tales señalamientos de error en conjunto.

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra*, es aquella que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra. El inciso (5) de esta Regla establece como fundamento para solicitar la desestimación, que la demanda no expone una "reclamación que justifique la concesión de un

remedio".[65] Al resolver una moción de desestimación por este fundamento, el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas.[66] Ante una moción de desestimación, las alegaciones hechas en la demanda hay que interpretarlas conjuntamente, liberalmente y de la manera más favorable posible para la parte demandante.[67] La demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar.[68] Debemos considerar, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida".[69] Tampoco procede la desestimación de una demanda, si la misma es susceptible de ser enmendada.[70]

El peticionario alega, que el foro sentenciador, al enfrentarse a una moción de desestimación bajo la Regla 10.2 (5) de Procedimiento Civil, *supra*, tenía que tomar como ciertas todas las alegaciones contenidas en la demanda,

---

[65] 32 L.P.R.A. Ap. III R. 10.2 (5).

[66] Sánchez v. Autoridad de los Puertos, 153 D.P.R. 559 (2001); Pressure Vessels P.R. v. Empire Gas P.R., 137 D.P.R. 497 (1994).

[67] Íd., Dorante v. Wrangler, 145 D.P.R.408 (1998).

[68] Íd.

[69] Pressure Vessels P.R. v. Empire Gas P.R., *supra*, pág. 505.Véase además, Unisys v. Ramallo Brothers, 128 D.P.R. 842 (1991).

[70] Clemente v. Depto. de la Vivienda, 114 D.P.R. 763 (1983).

incluyendo el hecho de que se había emitido una orden judicial para paralizar el pago del premio. Arguye que tales alegaciones de la demanda, tienen que contener hechos bien alegados y que de su faz no den margen a dudas. El foro intermedio apelativo concluyó, que tras examinar los autos originales del caso, no encontró orden de paralización alguna dictada por el Tribunal de Primera Instancia que estuviese certificada y hubiese sido notificada con copia a la Lotería. Determinó que en el expediente del foro de primera instancia había varias copias de un proyecto de "orden de remedio provisional", que ordenaba a la Lotería a paralizar el pago de los billetes premiados, idéntico al descrito por el allí apelante, pero que no acreditaba que se hubiere expedido una orden de paralización del referido pago. No obstante, de nuestro expediente surge un documento titulado "Orden de Remedio Provisional", con fecha de 18 de septiembre de 1998, firmado por el honorable José M. Lorié Velasco, Juez Superior del Tribunal de Primera Instancia, Sala Superior de San Juan. En el mismo se le ordena a la Lotería la paralización del pago del cheque ("stop payment") emitido para cubrir el importe del premio del billete número 20613, series B y D. Junto con la orden que consta en nuestro expediente, no hay constancia que refleje que la Lotería fuera notificada con copia de tal documento. Por lo cual, a falta de la notificación a la Lotería con copia de tal orden, no podemos adjudicarle su incumplimiento. Además, surge como hecho determinado en el caso CC-2005-220, presentado contra la

señora Rodríguez Colón, que ésta cobró el dinero de los billetes premiados el 17 de septiembre de 1998. Aún cuando se hubiese demostrado por el aquí peticionario la validez de la emisión de la referida orden de fecha del 18 de septiembre de 1998, si el propósito de la misma era que la Lotería paralizara el pago ("stop payment") del premio, su notificación a la Lotería podría ser tardía. La señora Rodríguez Colón, para esa fecha, ya había recibido el pago por concepto de los billetes premiados y es completamente especulativo que de haberse notificado hubiera podido paralizarse el pago ("stop payment"). No obstante, el Tribunal de Primera Instancia no debió desestimar la referida demanda porque de la misma surgen otras alegaciones que sí debieron ser consideradas en sus méritos. El peticionario alegó en su demanda, que el 15 de septiembre de 1998, el día antes del sorteo, prestó una declaración jurada haciendo constar la pérdida de los billetes y que la envió vía facsímil a la Lotería de Puerto Rico, quien la recibió ese mismo día. Teniendo ante si una moción de desestimación, el foro sentenciador tenía que tomar como ciertas estas alegaciones, interpretarlas liberalmente a favor del demandante y determinar si éste tenía una reclamación válida.

La Ley de la Lotería, *supra,* reglamenta lo concerniente al juego de billetes de la lotería en Puerto Rico y a las relaciones jurídicas entre los jugadores de billetes y el

Gobierno.[71] Esta ley regula, específicamente, el procedimiento administrativo que los jugadores deben seguir en casos de billetes de la lotería extraviados o destruidos. Sobre este particular, el artículo 10 de la citada ley lee, en lo pertinente, de la forma siguiente:

> [........]
> **Cualquier persona a quien se le extravíen, destruyan en cualquier forma o le sean apropiados ilegalmente o robados billetes o fracciones de billetes de la lotería, que desee establecer en su día una reclamación para en caso de que dichos billetes resulten premiados, deberán radicar ante el Director del Negociado de la Lotería o enviar por correo certificado una declaración jurada no menos de veinticuatro (24) horas antes de la fecha en que había de celebrarse el sorteo a que correspondan los billetes o fracciones. En caso de apropiación ilegal o robo de billetes o fracciones, la persona a quien le fueren apropiados ilegalmente o robados deberá notificarlo además, al Cuartel de la Policía más cercano. Se hará constar en dicha declaración jurada el hecho de la pérdida, destrucción o apropiación ilegal o robo de los billetes o fracciones y las circunstancias envueltas en la misma. En caso de que se alegue apropiación ilegal o robo de los billetes o fracciones se hará constar en la declaración jurada el número de la querella asignado por la Policía. En este caso, los fondos correspondientes o los premios de billetes o fracciones de billetes en controversia permanecerán en el "Fondo de la Lotería" hasta tanto se adjudique el derecho al cobro de los mismos.** Si transcurrido el término de seis (6) meses que concede la sec. 122 de este título para el cobro de billetes premiados aparecieren pendientes de pago el billete o las fracciones de billete a que se refiere la declaración jurada antes mencionada, y no se hubiere iniciado el procedimiento establecido en el inciso (b) de esta sección, el Director del Negociado de la Lotería procederá a hacer el pago del premio que

---

[71] _Rivera v. Departamento de Hacienda_, 149 D.P.R. 141, 150 (1999).

corresponda a la persona que suscribe la declaración jurada. (Énfasis suplido.)
[........][72]

De igual forma, el artículo 56 del Reglamento para la Administración y Funcionamiento de la Lotería de Puerto Rico[73], vigente a la fecha de los hechos[74], disponía que:

Artículo 56.- Billetes Perdidos, Hurtados o Destruidos

Cualquier persona a quien se le extravíen, destruyan en cualquier forma o le sean hurtados billetes o fracciones de billetes de la lotería, que desee establecer en su día una reclamación para en caso de que dichos billetes resulten premiados, **deberá radicar ante el Director o enviar por correo certificado una declaración jurada no menos de veinticuatro (24) horas antes de la fecha en que habría de celebrarse el sorteo a que corresponden los billetes o fracciones**. Se hará constar en dicha declaración jurada el hecho de la pérdida, destrucción o hurto de los billetes o fracciones y las circunstancias envueltas en la misma.
[........] (Énfasis suplido)

La Ley de la Lotería, *supra*, contempla la situación en la que se reclamen billetes extraviados antes de celebrarse un sorteo, o sea únicamente aplica a casos en los cuales la pérdida de los billetes se descubrió antes del sorteo.[75]

---

[72] 15 L.P.R.A. sec. 120.

[73] Reglamento Para la Administración y Funcionamiento de la Lotería de Puerto Rico (Reglamento del Departamento de Hacienda), Reglamento Núm. 1583, Departamento de Estado, 3 de agosto de 1972, pág. 31.

[74] Recientemente el Reglamento Para la Administración y Funcionamiento de la Lotería de Puerto Rico fue derogado por el hoy vigente Reglamento 6675, aprobado el 15 de agosto de 2003 y vigente desde el 13 de septiembre de 2003. En este nuevo reglamento la disposición aplicable es el artículo 52.

[75] Rivera v. Departamento de Hacienda, *supra*; Mojica v. Román Rodríguez, 116 D.P.R. 45 (1985).

Específicamente, contempla la situación en la que el jugador se percata de la pérdida de los billetes antes de las veinticuatro (24) horas anteriores al sorteo, dejándole así el margen de tiempo suficiente para cumplir con la disposición respecto a presentar la declaración jurada, notificando la pérdida, **"no menos de veinticuatro (24) horas antes de la fecha en que habría de celebrarse el sorteo a que corresponden los billetes o fracciones"**. Se desprende de este artículo, que de hacerse la reclamación según dispone la ley, el Negociado de la Lotería no puede proceder al pago de los billetes premiados hasta tanto un tribunal disponga sobre la controversia respecto al mismo.[76] De actuar de otra forma, el Negociado de la Lotería de Puerto Rico podría efectuar un pago sobre unos billetes en controversia que finalmente, podría resultar indebido.[77]

Ahora bien, ¿qué sucede cuando el jugador se percata de la pérdida de los billetes de la lotería dentro de esas veinticuatro(24) horas antes del sorteo? Presente esta situación, el jugador está imposibilitado de cumplir con el artículo 10 de la Ley de la Lotería, *supra*. No se trata de actuar de forma diligente para poder presentar la declaración jurada en tiempo, sino de una situación que no está contemplada en la ley. Tal situación requiere atención para no privar a una persona de un remedio. Bajo estas

---

[76] Concepción Pacheco v. Torruellas, 105 D.P.R. 27 (1976).

[77] Íd.

circunstancias, al recibir la Lotería de Puerto Rico una declaración jurada que señale la existencia de unos billetes extraviados o apropiados ilegalmente dentro de las veinticuatro (24) horas anteriores al sorteo, debido a que su dueño se percató de tal hecho dentro de ese periodo de tiempo, dicha entidad pública deberá, de salir premiados esos billetes reportados, detener el pago hasta que se dilucide ante el Tribunal de Primera Instancia la titularidad sobre los mismos. Al detener el pago, debe notificarle al poseedor de los billetes premiados que los presentó para cobro y al que los reclamó como suyos mediante la declaración jurada, que no pagará el premio hasta que diluciden el asunto sobre la titularidad de los billetes en el foro judicial. Una vez el foro judicial determine, en forma final y firme, quien es el verdadero dueño de los billetes, la Lotería procederá a pagarle el dinero del premio.

A la luz de lo expresado y existiendo unas alegaciones del demandante de autos, de que envió una declaración jurada a la Lotería dentro de las veinticuatro (24) horas antes del sorteo, informando el extravío de los billetes premiados, entendemos que erró el Tribunal de Primera Instancia al desestimar la causa de acción presentada en contra de la Lotería por daños y perjuicios, así como también el Tribunal de Apelaciones al confirmar tal actuación. No es correcto concluir que el demandante no tenía derecho a remedio alguno bajo cualesquiera de los hechos alegados en la demanda. Al interpretar las alegaciones de la demanda liberalmente y de

la manera más favorable al demandante, tenemos que concluir que las mismas de ser probadas podrían tener mérito. Concluimos que no es procedente la desestimación de la causa de acción sino la continuación del procedimiento para dirimir la controversia planteada.

III

En el caso CC-2005-220, el Tribunal de Primera Instancia, Sala Superior de Ponce, determinó que la controversia central a resolver era a cuál parte le pertenecía legítimamente el premio de la dupleta 20613, si al demandante que reclamó los billetes premiados como comprados y perdidos antes del sorteo, o a la demandada que cobró el premio de los billetes en controversia. Determinó que quien había adquirido la titularidad y el derecho dominical sobre los billetes premiados fue el señor Ramiro Colón Muñoz y que la demandada no demostró haber adquirido titularidad sobre los mismos.

El Tribunal de Apelaciones revocó tal determinación del foro sentenciador, bajo el fundamento de que el señor Colón Muñoz no había cumplido con las formalidades para reclamar billetes extraviados o apropiados ilegalmente, según requiere la Ley y el Reglamento de la Lotería, *supra*. El foro intermedio apelativo no se concentró en evaluar si el Tribunal de Primera Instancia erró en forma manifiesta en la apreciación de la prueba presentada y admitida respecto a la titularidad de los billetes, que es el asunto central de esta controversia.

El señor Colón Muñoz, inconforme con lo determinado por el Tribunal de Apelaciones, acude ante nos señalando que dicho foro erró al aplicar a los hechos determinados por el foro primario, la doctrina de prescripción instantánea. Por su parte, la aquí recurrida, señora Digna Rodríguez Colón, alega estar protegida por tal principio.

## A.

Los billetes de la lotería, por disposición expresa del artículo 12 de la Ley de la Lotería, *supra*, se consideran valores al portador. No obstante, este Tribunal expresó que lo dispuesto en este artículo no implica que "el pago del premio al poseedor o portador del billete premiado, constituya una adjudicación definitiva, absoluta e inatacable del derecho dominical sobre dicho premio en perjuicio de tercero".[78] Una tercera persona que alegue ser la legítima dueña del billete, o que alegue tener alguna participación en el mismo, no está impedida de establecer su reclamación ante los tribunales.[79] Esa tercera persona puede incoar una acción reivindicatoria contra quien, sin ser el dueño, posee el billete, lo presenta al cobro en la Lotería y obtiene su pago.[80] En cuanto a este asunto, señala el tratadista Scaevola, que "el hecho de ser el billete de la lotería un

---

[78] *Fuentes v. Fulano de Tal*, 84 D.P.R. 506, 513 (1962); *Mieres, Fiscal v. Pagán*, 76 D.P.R. 699, 704 (1954).

[79] Íd.

[80] *Rivera v. Departamento de Hacienda*, *supra*; *Mojica v. Román Rodríguez*, *supra*.

documento al portador, no es suficiente para borrar las irregularidades de un modo adquisitivo vicioso".[81]

En Cruz v. Director de la Lotería[82], y Fuentes v. Fulano de Tal[83], expresamos claramente que la Ley de la Lotería, *supra*, no tuvo el propósito, ni ha tenido el efecto de derogar las disposiciones del Código Civil referentes al derecho de propiedad. Además, tal como hemos expresado, dicha ley regula la relación entre los jugadores de billetes y el Gobierno, y no se extiende su aplicación a la controversia entre personas privadas, relativa a la titularidad sobre unos billetes de la lotería premiados. En los mencionados casos resolvimos, partiendo de la premisa de que los billetes de la lotería son bienes muebles, citando al tratadista Castán, que "la posesión, aún adquirida de buena fe, de cosas muebles perdidas o sustraídas, no excluye la acción reivindicatoria, y [...] no extingue el derecho de propiedad".[84] El artículo del Código Civil pertinente a este tema y a la jurisprudencia mencionada, es el artículo 393, que dispone lo siguiente:

> La posesión de los bienes muebles adquiridos de buena fe equivale al título. Sin embargo, **el que hubiese perdido una cosa mueble o hubiese sido privado de ella ilegalmente, podrá reivindicarla de quien la posea.**

---

[81] Scaevola, Comentarios al Código Civil, Tomo 11, pág. 439, citado en Fuentes v. Fulano de Tal, *supra*, pág. 515.

[82] 94 D.P.R. 260 (1967).

[83] 84 D.P.R. 506 (1962).

[84] Castán, Derecho Civil Español, Común y Foral, Tomo 2, 6ta. ed, 1943, pág. 52, citado en Cruz v. Director de la Lotería, *supra*, pág. 265 y en Fuentes v. Fulano de Tal, *supra*, pág. 509.

> Si el poseedor de la cosa mueble perdida o sustraída la hubiese adquirido de buena fe en venta pública, no podrá el propietario obtener la restitución sin reembolsar el precio dado por ella.
> En cuanto a las cosas adquiridas en la bolsa, feria o mercado, o de un comerciante legalmente establecido y dedicado habitualmente al tráfico de objetos análogos, se estará a lo que dispone el Código de Comercio, Título 10. [85]
> (Énfasis suplido)

Incoada una acción para reivindicar unos billetes de lotería extraviados o su premio, el Tribunal de Primera Instancia tiene que, por preponderancia de prueba, determinar quién ostenta el derecho dominical sobre los mismos. Tal determinación será cuestión de evaluación y suficiencia de la prueba, en virtud de la Regla 10 de las de Evidencia. Dicha regla lee de la forma siguiente:

> **El tribunal o juzgador de hechos deberá evaluar la evidencia presentada, a los fines de determinar cuáles hechos han quedado establecidos o demostrados,** con sujeción a los siguientes principios:
>
> (A) El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por ninguna de las partes.
>
> (B) **a obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en la cuestión en controversia.**
>
> (C) Para establecer un hecho no se exige aquel [grado] de prueba que, excluyendo posibilidad de error, produzca absoluta certeza; sólo se exige la certeza o convicción moral en un ánimo no prevenido.
>
> (D) La evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que por ley otra cosa se disponga.

---

[85] 31 L.P.R.A. sec. 1479.

(E) El tribunal o jurado no está obligado a decidir de conformidad con las declaraciones de cualquier número de testigos, que no llevaren a su ánimo la convicción contra un número menor u otra evidencia que le convenciere.

(F) **En los casos civiles la decisión del juzgador deberá producirse de acuerdo con la preponderancia de las pruebas a base de criterios de probabilidad;** en casos criminales la culpabilidad del acusado debe establecerse más allá de duda razonable.

(G) Cuando pareciere que una parte, pudiendo haber ofrecido una prueba más firme y satisfactoria, ofrece una más débil y menos satisfactoria, la evidencia ofrecida deberá mirarse con sospecha.

(H) Cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o mediante evidencia indirecta o circunstancial. Se entiende por evidencia directa aquella que prueba el hecho en controversia sin que medie inferencia o presunción alguna, y que de ser cierta demuestra el hecho de modo concluyente. Se entiende por evidencia indirecta o circunstancial aquella que tiende a demostrar el hecho en controversia probando otro distinto, del cual––en unión a otros hechos ya establecidos––puede razonablemente inferirse el hecho en controversia. [86]

Por lo tanto, la parte que alegue haber adquirido la titularidad sobre los billetes premiados en controversia, deberá presentar la evidencia necesaria para sustentarlo.

En autos, el demandante, señor Ramiro Colón Muñoz, en virtud del citado artículo 393 del Código Civil, *supra*, y de la jurisprudencia mencionada, podía presentar su reclamación en contra de la demandada, dirigida a reivindicar el premio de los billetes de lotería premiados.

---

[86] 32 L.P.R.A. Ap. IV R. 10.

Además, presentó prueba que el Tribunal de Primera Instancia consideró suficiente, para demostrar que fue él y no la señora Digna Rodríguez Colón quien adquirió la titularidad sobre los billetes de lotería premiados.

B.

Por su parte, la aquí recurrida alega estar protegida por la doctrina de prescripción instantánea. No le asiste razón. Veamos.

La doctrina de prescripción instantánea surge del último párrafo del antes citado artículo 393 del Código Civil, el cual dispone que "en cuanto a las cosas adquiridas en la bolsa, feria o mercado, o de un comerciante legalmente establecido y dedicado habitualmente al tráfico de objetos análogos, se estará a lo que dispone el Código de Comercio".[87] Por su parte, el Código de Comercio establece en su artículo 59 lo siguiente:

> La compra de mercaderías en almacenes o tiendas abiertos al público causará prescripción de derecho a favor del comprador respecto de las mercaderías adquiridas, quedando a salvo en su caso, los derechos del propietario de los objetos vendidos para ejercitar las acciones civiles o criminales que puedan corresponderle contra el que los vendiere indebidamente.[88]

Resolvimos en <u>González, etc. v. Coop. Ahorro Créd.</u>,[89] que aquella persona que adquiere en mercaderías o tiendas

---

[87] 31 L.P.R.A. sec. 1479.

[88] 10 L.P.R.A. sec. 1154.

[89] 122 D.P.R. 1, 15-16 (1988).

abiertas al público, tiene el beneficio de la doctrina sobre prescripción instantánea. La prescripción de derecho que provoca es instantánea, adquiriendo el comprador de buena fe inmediatamente un título válido.[90] Allí también expresamos que "la `mercadería o tienda abierta´ del vendedor de billetes de lotería de Puerto Rico son todos los sitios públicos, incluso plazas de mercado, plazas de recreo, centros comerciales, calles, carreteras públicas, restaurantes, oficinas públicas y privadas; en fin, toda la gama de posibilidades de sitios en que pueda haber una persona interesada en comprar billetes de la lotería".[91] Las personas que adquieran billetes de lotería de aquellos individuos que aparenten dedicarse al comercio de billetes de lotería, están protegidas bajo la doctrina de prescripción instantánea.[92] El propósito de esta doctrina es cumplir con "el interés apremiante que tiene el Estado de asegurar la vida del comercio de billetes, mediante el amparo de las cosas adquiridas de buena fe en la forma usual que éstas se adquieren en nuestra jurisdicción".[93]

La referida protección es bajo el supuesto de que estamos dentro de un cuadro fáctico en el que efectivamente esa persona que alega estar protegida por la doctrina de prescripción instantánea, ciertamente adquirió mediante

---

[90] Id., pág. 16.

[91] Id.

[92] Íd., pág. 18.

[93] Íd., pág. 23.

compra los billetes de lotería en cuestión de un agente autorizado. En autos, tenemos una determinación de hecho del Tribunal de Primera Instancia, Sala Superior de Ponce, de que quien realmente compró los billetes ganadores de una persona que se dedica al comercio de billetes de la Lotería, y adquirió titularidad sobre los mismos fue el señor Colón Muñoz.

En ausencia de error manifiesto, pasión, prejuicio o parcialidad, un tribunal apelativo no debe intervenir con las determinaciones de hecho y adjudicación de credibilidad hecha por el juzgador de hechos en el Tribunal de Primera Instancia, que es quien tuvo la oportunidad de escuchar las declaraciones de los testigos, pudo apreciar su "demeanor" y está en mejor posición para aquilatar la prueba.[94] Las determinaciones de hecho del Tribunal de Primera Instancia merecen gran deferencia y no deben ser descartadas arbitrariamente, ni sustituidas por el criterio de un tribunal apelativo.[95]

Por lo tanto, debido a que la recurrida no logró demostrar la existencia de error manifiesto, pasión, prejuicio o parcialidad en la determinación del Tribunal de Primera Instancia, le debemos deferencia a las

---

[94] Véase Rodríguez v. Pérez, 2005 T.S.P.R. 36, 2005 J.T.S. 41, 164 D.P.R. ___ (2005); citando a Argüello v. Argüello, 2001 T.S.P.R. 124, 2001 J.T.S. 127, 155 D.P.R. ___ (2001) y Trinidad v. Chade, 2001 T.S.P.R. 7, 2001 J.T.S. 10, 153 D.P.R.___(2001). Véase además, Rolón v. Charlie Car Rental, Inc., 148 D.P.R. 420 (1999); Sepúlveda v. Depto. de Salud, 145 D.P.R. 560 (1998).

[95] Íd.

determinaciones de hecho del foro sentenciador. Habiendo determinado el foro primario, por preponderancia de prueba, como cuestión de hecho, que el dueño de los billetes premiados es el señor Ramiro Colón Muñoz, la señora Digna Rodríguez Colón no puede estar protegida por la doctrina de prescripción instantánea. Dicho foro, luego de escuchar y evaluar toda la prueba, no creyó y por lo tanto no determinó que fue la señora Rodríguez Colón quien compró los billetes de la lotería en controversia.

Concluimos, que incurrió en error el Tribunal de Apelaciones al revocar lo dictaminado por el Tribunal de Primera Instancia, en cuanto a la titularidad de los billetes premiados. Su determinación, en cuanto a que el señor Ramiro Colón Muñoz incumplió con la Ley de la Lotería, *supra,* para resolver esta controversia no es correcta. Dicha Ley regula la relación entre los jugadores de billetes y el Gobierno, y su aplicación no se extiende a la controversia entre personas privadas como la del presente caso, y relativa a la titularidad y el derecho dominical sobre unos billetes de la lotería premiados.

IV

Por los fundamentos antes expuestos, en el caso CC-2003-553, revocamos la determinación del Tribunal de Apelaciones que confirmó el dictamen emitido por el Tribunal de Primera Instancia, Sala Superior de San Juan, que a su vez desestimó la acción en daños y perjuicios por pago indebido presentada

por el señor Ramiro Colón Muñoz en contra de la Lotería de Puerto Rico. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para que continúe con los procedimientos a tenor con lo aquí pautado.

En el caso CC-2005-220, se revoca la sentencia emitida por el Tribunal de Apelaciones y se reinstala la dictada por el Tribunal de Primera Instancia, Sala Superior de Ponce, que adjudicó al señor Ramiro Colón Muñoz la titularidad y el derecho dominical sobre los billetes de la lotería premiados.

**Efraín E. Rivera Pérez**
**Juez Asociado**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramiro Colón Muñoz, et al.

     Peticionario

       v.

                         CC-2005-220

Lotería de Puerto Rico, et al.

                  Cons.CC-2003-553

     Recurridos


SENTENCIA


San Juan, Puerto Rico, a 20 de abril de 2006.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, en el caso CC-2003-553, revocamos la determinación del Tribunal de Apelaciones que confirmó el dictamen emitido por el Tribunal de Primera Instancia, Sala Superior de San Juan, que a su vez desestimó la acción en daños y perjuicios por pago indebido presentada por el señor Ramiro Colón Muñoz en contra de la Lotería de Puerto Rico. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para que continúe con los procedimientos a tenor con lo aquí pautado.

En el caso CC-2005-220, se revoca la sentencia emitida por el Tribunal de Apelaciones y se reinstala la dictada por el Tribunal de Primera Instancia, Sala Superior de Ponce, que adjudicó al señor Ramiro Colón Muñoz la titularidad y el derecho dominical sobre los billetes de la lotería premiados.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton concurre con el resultado sin

opinión escrita.  Las Juezas Asociadas señora Fiol Matta y la señora Rodríguez Rodríguez inhibidas.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo