Opinión disidente emitida por el
Juez Asociado Señor Martínez Torres.
La Opinión del Tribunal se limita a atender el asunto de si el Sr. Joaquín López Cámara se comprometió a responder en su carácter personal al firmar un pagaré que garantizaba una deuda contraída por El Legado de Chi Chí Rodríguez Gulf Resort (S.C.) (El Legado) mediante un contrato de transacción titulado Mutual Release. Particularmente, se concluye que ese pagaré fue firmado por el señor López Cámara en representación de El Legado, por lo que no es responsable por la deuda en su carácter personal. Disiento respetuosamente de esa determinación por entender, al igual que los foros recurridos, que la firma del señor López Cámara en el pagaré es ambigua, por lo que él debe responder por la obligación contraída bajo ese documento.
I
Entre el 28 de mayo de 2003 y el 14 de enero de 2004, Cruz Consulting Group, Inc. (Cruz Consulting) se obligó mediante tres contratos a proveer servicios de cable TV y a *524 instalar servicios de Internet y teléfono, entre otros, a El Legado. Luego de que se realizaran las labores pactadas, el 31 de agosto de 2005 Cruz Consulting le solicitó a El Legado $419,564.59 para el pago de los servicios. Sin embargo, El Legado se negó a reconocer que esa era la cantidad adeudada. Sentencia del Tribunal de Primera Instancia, pág. 2.
El 7 de noviembre de 2005, Cruz Consulting y El Legado se reunieron junto con sus respectivas representaciones legales y acordaron transar el monto de la reclamación por $250,000, los cuales se pagarían en dos plazos. En aquel momento, los socios gestores de El Legado eran el Sr. Juan Rodríguez Vilá y las corporaciones T/MG Corp., Inc. y Potrero Matos, Inc., representadas por el señor López Cámara. Por su parte, el Sr. José L. Cruz Cruz representaba a Cruz Consulting. Como conocía la situación económica de El Legado, el señor Cruz Cruz exigió en esa reunión que los señores López Cámara y Rodríguez Vilá se obligaran personalmente como condición para aceptar la oferta de transacción. Sentencia del Tribunal de Apelaciones de 30 de agosto de 2013, pág. 15, Apéndice del Certiorari, pág. 53. Las expresiones del señor Cruz Cruz fueron las siguientes:
“Ahí yo fui bien enfático con él y le dije: ‘Okey, yo podría aceptar el pagaré, pero conociendo la situación de El Legado, que no le está pagando a nadie, yo necesito que los socios se hagan responsables por esa cantidad. O sea, yo necesito que ellos estén en su carácter personal en ese pagaré’. Y él me dijo: ‘Bueno, pues vamos a hacerlo así’ ”. [..,] íd.
El 10 de enero de 2006 ese acuerdo se recogió en un contrato de transacción que titularon Mutual Release y que firmaron todas las partes. En ese contrato se incluyó un lenguaje que especifica que los señores López Cámara y Rodríguez Vilá comparecían en ese contrato en representación de El Legado. Apéndice del Certiorari, pág. 180. Parte del contrato lee como sigue:
*525 OF THE SECOND PART El Legado de Chi Chi Rodriguez Golf Resort, S.E., a Puerto Rico Special Partnership (hereinafter, the “Partnership”), represented in this act by its Managing Partners, Joaqu[í]n López, and Mr. Juan (“Chi Chi”) Rodríguez, id.
En ese acuerdo, El Legado se comprometió a realizar un primer pago de $125,000 a los 15 días de firmar el Mutual Release y un segundo pago por la misma cantidad, que debía pagarse el 1 de diciembre de 2006.
En la última página del Mutual Release aparecen las firmas de las partes. En el lado izquierdo aparece el nombre “CRUZ CONSULTING GROUP, CORP.” con un espacio debajo donde consta el nombre y la firma del señor Cruz Cruz. Al lado derecho se lee “EL LEGADO DE CHI CHI RODRÍGUEZ GOLF RESORT, S.E.” con dos espacios debajo, el primero con la firma y el nombre del señor Rodríguez Vilá, y el segundo con la firma y el nombre del señor López Cámara. Apéndice del Certiorari, pág. 184.
El Legado cumplió con el pago de $125,000 en el primer plazo. Los restantes $125,000 se garantizaron con un pagaré firmado ante notario y con fecha de vencimiento de 1 de diciembre de 2006, establecida en el Mutual Release. El último párrafo de ese pagaré contiene una cláusula en la que se condena a “la suscribiente y lo sus representantes al pago del principal, intereses, gastos y honorarios de abogado [...]”. (Énfasis nuestro). Apéndice del Certiorari, pág. 189. En la parte inferior de ese pagaré hay tres espacios para las firmas de las partes. El primer espacio corresponde a El Legado y está en blanco, es decir, no hay ninguna firma de sus socios o representantes en ese espacio. En el segundo espacio constaba el nombre y la firma del señor Rodríguez Vilá, identificado como socio gestor (“Managing Partner”) de El Legado. Por último, el tercer espacio correspondía al señor López Cámara, identificado también como socio gestor (“Managing Partner”) de El Legado, y contenía su firma. Cabe destacar, sin embargo, que el señor López Cámara es el representante de las dos corpo *526 raciones que son socias gestoras de El Legado junto al señor Rodríguez Vilá —T/MG Corp., Inc. y Potrero Matos, Inc.— y que en todos los negocios jurídicos en los que El Legado fue parte, el señor López Cámara compareció y firmó como representante de ellas, mas no como representante de El Legado. Sentencia del Tribunal de Primera Instancia, pág. 3, Apéndice del Certiorari, pág. 102. En otras palabras, y como testificó durante la etapa inicial de los procedimientos, el señor López Cámara no es socio gestor de El Legado.
Eventualmente, El Legado no satisfizo el pago correspondiente al segundo plazo para la fecha acordada. El incumplimiento de El Legado llevó a Cruz Consulting a presentar la demanda que originó la controversia que hoy nos ocupa.
El Tribunal de Primera Instancia declaró “con lugar” la demanda que presentó Cruz Consulting y condenó a los señores López Cámara y Rodríguez Vilá, a sus esposas y a sus respectivas Sociedades Legales de Gananciales al pago solidario de la deuda. Basó su determinación en lo siguiente:
Estando claro el acuerdo transaccional otorgado el 10 de enero de 2006 entre el Legado y Cruz, [¿]cuál era la necesidad o causa para suscribir un Pagaré por la misma cuantía y en el mismo plazo del acuerdo transaccional a que se obligaron El Legado y Cruz[?] Ninguna. El Legado ya se había obligado al pago de $250,000.00 para finiquitar el asunto de los alegados respectivos incumplimientos de las Partes con los 3 contratos. La única explicación legal para explicar que los co-demandados se obligaron por la suma de $125,000.00 firmando un Pagaré, es que Cruz les requirió una garantía personal y los socios gestores, sus esposas y las Sociedades Legales de Gananciales se la prestaron en caso de incumplimiento de la Sociedad Especial y en Comandita del Legado. Sentencia del Tribunal de Primera Instancia, pág. 10, Apéndice del Certiorari, pág. 109.
Inconformes, El Legado, los señores López Cámara y Rodríguez Vilá, sus esposas y sus respectivas Sociedades Legales de Gananciales presentaron un recurso de apelación ante el Tribunal de Apelaciones. Ese foro modificó la sentencia emitida por el Tribunal de Primera Instancia a los únicos efectos de eliminar la solidaridad entre las par *527 tes y confirmó el resto de la sentencia. El foro apelativo se basó en el mismo análisis que el foro primario para llegar a su conclusión. Además, estableció que como el espacio correspondiente a El Legado de Chi Chí en el pagaré está en blanco, “[e]llo se traduce en que El Legado de Chi Chí, sencillamente, no se comprometió en ese documento”. Sentencia del Tribunal de Apelaciones de 30 de agosto de 2013, pág. 28, Apéndice del Certiorari, pág. 66. Añadió que
[...] tuvo toda la razón el TPI cuando, en corte abierta, dejó establecido que el hecho de que el documento identifique a los apelantes como socios gestores de El Legado de Chi Chí, no excluye la posibilidad de que éstos se hayan obligado en su carácter personal. Se trata de una mera identificación, pero no equivale a decir que se firma en representación de la sociedad, tal y como claramente se especificó en el “Mutual Release”. íd., pág. 67.
Insatisfechos, el señor López Cámara, su esposa María Elena Matos y la Sociedad Legal de Gananciales compuesta por ambos acudieron ante nos mediante una petición de certiorari. Alegan que el foro apelativo intermedio erró al determinar que el señor López Cámara responde en su carácter personal y al determinar que la Sociedad Legal de Gananciales también quedó obligada. El señor Rodríguez Vilá no recurre de la sentencia del Tribunal de Apelaciones. Por lo tanto, únicamente atenderemos el planteamiento de los aquí peticionarios.
HH HH
Como bien resuelve la mayoría de este Tribunal, nos encontramos ante un instrumento negociable, en específico, un pagaré, al que le aplica la Ley Núm. 208-1995, según enmendada, conocida como Ley de Transacciones Comerciales. 19 LPRA see. 401 et seq. Un instrumento negociable es un documento o escrito que puede transmitirse con facilidad con el derecho a cobrar una suma de dinero. M.R. Garay Aubán, Derecho cambiario de Estados Unidos *528 y Puerto Rico, Ponce, Editorial Revista de Derecho Puertorriqueño, 1999, pág. 1. La Sec. 2-104 de la Ley Núm. 208-1995, 19 LPRA see. 504, define un instrumento negociable como una promesa u orden incondicional de pagar una cantidad específica de dinero, pagadero al portador o a la or-den de una persona identificada, pagadero a la presentación o en fecha específica, y que no contiene ningún otro compromiso o instrucción. Asimismo, el pagaré es una clase de instrumento negociable que contiene una promesa de pago. Sec. 2-104(e) de la Ley Núm. 208-1995, 19 LPRA sec. 504(e).
Por su parte, la Sec. 2-401 de la Ley Núm. 208-1995, 19 LPRA see. 651, establece que, para que una persona incurra en responsabilidad bajo un instrumento negociable, tiene que haber firmado el instrumento o estar representada por un agente o representante que haya firmado el documento obligándola.
Para que una firma de un representante obligue al representado debe ocurrir lo siguiente: (1) que la firma sea una “firma autorizada” de la persona representada; (2) que la forma de la firma demuestre, fuera de toda ambigüedad, que fue hecha a nombre de la persona representada, y (3) que la persona representada esté identificada en el documento. Sec. 2-402 de la Ley Núm. 208-1995, 19 LPRA see. 652. De estar presentes esos tres supuestos, el representante que firma no responde por el instrumento. De lo contrario, el que firmó como representante será responsable de la obligación en el instrumento ante un tenedor de buena fe que tomó el instrumento sin tener conocimiento de que el representante no firmó con la intención de hacerse responsable. Id. Ante toda otra persona, el representante no será responsable solo si logra probar que las partes originales no tuvieron la intención de obligarlo. Id.
Cuando se obliga al supuesto representante a hacerse responsable por el instrumento, se evita que circulen instrumentos bajo los cuales ninguna persona tenga *529 responsabilidad. Garay Aubán, op. cit., pág. 292. Por el contrario, si se dispusiera que el supuesto representante no es responsable bajo el instrumento, no habría persona alguna que respondiera por él. Id. Ello permitiría que circulen instrumentos fútiles que no constituyan una garantía real por no imponer responsabilidad a persona alguna. Esto responde a que,
[...] cuando un cesionario adquiere el documento con la firma de una persona que no indica que representa a otro, el cesionario está confiando en la solvencia y en la responsabilidad de esa persona sin considerar que el verdadero responsable es otra persona. (Enfasis en el original). Id., pág. 291.
Por otra parte, imponer responsabilidad a una persona cuya firma no aparece en el documento ni que surja del documento que está siendo representada, crearía una situación ideal para perpetrar fraudes, ya que "podría resultar que el otorgante de un documento cuando le fuera solicitado el pago de la obligación alegara que firmó la misma como representante de otra [...]”. B. Santiago Romero, Tratado de Instrumentos Negociables: Ley Uniforme de Instrumento Negociables de Puerto Rico y Ley del Código Uniforme de Comercio de los Estados Unidos, 2da ed. rev., San Juan, Editorial Universitaria, 1981, pág. 123.
Es por ello que “[e]l hecho de si el representante indica o no su calidad representativa en el instrumento es muy importante para determinar si el representante también está obligado a pagar el instrumento”. (Enfasis en el original). Garay Aubán, op. cit., pág. 289. Aun cuando la intención del que firma sea obligar a la persona representada y no obligarse él personalmente,
[...] el factor determinante resulta ser lo que aparezca o se desprenda de la firma y el documento. En otras palabras, lo importante constituye la intención objetiva o la intención que se desprenda del contenido o de la propia faz del documento en sí, y no lo que tuvo en mente el firmante al otorgar el documento. (Énfasis suplido). Santiago Romero, op. cit., pág. 123.
*530 Además, la Sec. 2-117 de Ley Núm. 208-1995, 19 LPRA see. 517, permite que otros acuerdos suplementen el instrumento, al disponer, en lo pertinente, lo siguiente:
Sujeto al derecho aplicable referente a la exclusión de prueba de acuerdos contemporáneos o previos, la obligación contraída por una parte en un instrumento de pagar el instrumento podrá modificarse, suplementarse o anularse por un acuerdo separado entre el deudor y la persona con derecho a exigir el cumplimiento del instrumento, si el instrumento se emite o la obligación se incurre confiando en el acuerdo o como parte de la misma transacción que da motivo al acuerdo.
III
La Opinión del Tribunal interpreta erróneamente la Ley Núm. 208-1995, supra, al sugerir que únicamente debemos examinar las firmas del pagaré en cuestión. Esa ley dis-pone que, para que el representante no responda bajo el instrumento, “la forma de la firma” debe demostrar fuera de toda ambigüedad que fue hecha a nombre de la persona representada. Sec. 2-402 de la Ley Núm. 208-1995, supra. La mayoría de este Tribunal se enfoca únicamente en esa cláusula y, en su análisis, nos remite únicamente a las fir-mas en el pagaré, obviando el contenido del instrumento.
Ese análisis no es suficiente para interpretar en qué carácter firmó el señor López Cámara en el pagaré. Como ya mencionamos, lo importante es lo que se desprende del contenido o de la faz del documento. Santiago Romero, op. cit., pág. 123. Sin duda eso incluye las firmas en el documento, pero no se limita a ellas. Lo anterior supone que al analizar la forma de la firma, como indica la Sec. 2-402 de la Ley Núm. 208-1995, supra, el análisis se haga en contexto con el contenido del documento. Las firmas no pueden interpretarse en el vacío. De lo contrario, estaríamos creando un mecanismo ideal para emitir documentos fraudulentos. Al firmar un documento, las partes confían *531 en el contenido de sus cláusulas y en que el texto del documento recoja los acuerdos correctamente y según pactados.
En este caso surgen dudas respecto a quién responde por la cantidad adeudada. La realidad es que estamos ante un instrumento ambiguo. Esa ambigüedad surge al analizar las firmas junto con el contenido del pagaré. El contenido del pagaré que firmaron las partes dispone que “la suscribiente y/o sus representantes” quedan obligados al pago de la deuda. Apéndice del Certiorari, pág. 189. Esa disposición pretende imponer responsabilidad a los representantes de El Legado. Difiero de lo expresado en el escolio 35 de la Opinión del Tribunal porque ese hecho es pertinente para el análisis de esta controversia. Es por eso que, al examinar la forma de las firmas, el análisis debe hacerse a la luz de esa disposición.
La firma del señor López Cámara aparece acompañada de su nombre y una identificación “como socio gestor” de El Legado; lo mismo ocurre con la firma del señor Rodríguez Vilá. Coincido con la determinación de los foros inferiores de que la firma del señor López Cámara en el pagaré como socio gestor es una mera identificación. Ahora bien, esa identificación trae consigo varios problemas.
Primero, el pagaré dispone expresamente que se condena a los representantes al pago de la deuda y el señor López Cámara pretendía identificarse como representante de El Legado al firmar el instrumento. Sin embargo, se identificó como socio gestor de El Legado. Esto hace que su firma sea ambigua, porque no corresponde al texto de la cláusula que impone responsabilidad a los representantes. Ser un representante no equivale a ser un socio. En el escolio 31 de la Opinión del Tribunal se atribuye gran peso al hecho de que Cruz Consulting expresó que “ los demandados prepararon y firmaron el Pagaré [...] como representantes de [El Legado]’ ”. Eso no puede servir de base para determinar que el señor López Cámara firmó exclusivamente en representación de El Legado. El señor Cruz Cruz *532 hizo esa aseveración porque confió en el texto del pagaré, que expresa que los “representantes” serán responsables del pago. Al analizar ese texto con la firma del señor López Cámara como socio gestor surge una confusión en cuanto a quién pretendían adjudicar responsabilidad los comparecientes en el instrumento.
Segundo, del expediente surge que el señor López Cámara expresó durante su testimonio en el foro primario que no es socio de El Legado. Sentencia del Tribunal de Apelaciones de 30 de agosto de 2013, pág. 12, Apéndice del Certiorari, pág. 50. De igual forma, el señor Rodríguez Vilá admitió que el señor López Cámara no es socio. Id., pág. 10. El señor López Cámara meramente representaba a las corporaciones T/MG Corp., Inc. y Potrero Matos, Inc., las cuales sí eran socias de El Legado. Este hecho es pertinente, ya que el señor López Cámara firmó el pagaré como “socio gestor” de El Legado cuando en realidad no es su socio. Su firma tampoco se hizo en representación de las corporaciones que sí son socias de El Legado pues, como mencionamos, uno de los requisitos para que la firma de un representante obligue al representado es que este último aparezca identificado en el documento. Sec. 2-402 de la Ley Núm. 208-1995, supra. En ninguna parte del pagaré se menciona a T/MG Corp., Inc. y Potrero Matos, Inc. Es por eso que no podemos concluir que la firma del señor López Cámara se hizo como representante de esas corporaciones. Tampoco podemos concluir que firmó como socio gestor de El Legado porque él no es socio. Entonces, ¿por quién firmó el señor López Cámara en el pagaré? No está claro. Esa ambigüedad causa que por ley responda personalmente el señor López Cámara, lo que coincide con la prueba de intención que se presentó en el Tribunal de Primera Instancia.
Al respecto, existe una determinación de hechos que indica que el 7 de noviembre de 2005 se llevó a cabo una reunión en la que Cruz Consulting aceptó una oferta de transacción hecha por El Legado a cambio de que los socios *533 gestores de El Legado garantizaran la deuda personalmente. Sentencia del Tribunal de Primera Instancia, pág. 2, Apéndice del Certiorari, pág. 101. El foro primario dio credibilidad al testimonio del señor Cruz Cruz, quien testificó que el pagaré en controversia se emitió como garantía personal de la cantidad que se acordó en el Mutual Release.
Como conocemos, la apreciación de la prueba del foro primario merece gran deferencia. In re Rosado Nieves, 189 DPR 259, 270 (2013); Dávila Nieves v. Meléndez Marín, 187 DPR 750 (2013); Colón v. Lotería, 167 DPR 625, 659 (2006). En ausencia de error manifiesto, pasión, prejuicio o parcialidad, los tribunales no deben intervenir con las determinaciones de hecho y adjudicación de credibilidad que hace un juzgador en el Tribunal de Primera Instancia, ya que es este quien tuvo la oportunidad de escuchar la prueba testifical y apreciar el comportamiento (“demeanor”) de los testigos, y quien está en mejor posición para aquilatar la prueba. In re Rosado Nieves, supra.
Interpretar la Ley Núm. 208-1995, supra, como lo hace la Opinión del Tribunal, peijudica los intereses de una parte a quien el foro primario, que tuvo la prueba ante sí, le dio entera credibilidad. Además, abre un camino al fraude y al perfeccionamiento de instrumentos negociables imprecisos y engañosos. La propia ley establece que sus cláusulas se deberán interpretar y aplicar liberalmente. Sec. 1-102 de la Ley Núm. 208-1995, 19 LPRA see. 401. Por tal razón, al examinar la forma de la firma en un pagaré no debemos limitarnos a la estampa que hace una persona para identificarse, pues el concepto de firmar un documento es un acto que simboliza aceptación y conformidad con todo lo que se expresa allí.
¿Cómo identificar la ambigüedad de una firma si no es estudiándola en conjunto con el texto al que se está consintiendo? La forma como se firma corresponde a la manera como el firmante compareció en el documento. El modo más eficiente de analizarla es a la luz del contenido del *534 resto del documento. Si no, ¿de qué valen las cláusulas introductorias que establecen la calidad en la que comparecen las partes en el documento si solo se va a acudir a las firmas de las partes como determina hoy el Tribunal?
Según ese análisis, el señor López Cámara expresó su conformidad con lo establecido en el pagaré al firmarlo. Parte de lo allí establecido era que “la suscribiente y/o sus representantes” serían responsables del pago del principal, intereses, gastos y honorarios de abogado. Ello unido al hecho de que el señor López Cámara firmó identificándose como socio gestor de El Legado cuando no lo es, y a que tampoco firmó como representante de T/MG Corp., Inc. y Potrero Matos, Inc., apunta a que existe ambigüedad en la forma de las firmas en el pagaré. Como consecuencia, la firma no cumple con todos los requisitos que impone la See. 2-402 de la Ley Núm. 208-1995, supra, para que se obligue a un representado. No podemos concluir que la forma de la firma del señor López Cámara demuestra fuera de toda ambigüedad que fue hecha a nombre de El Legado o sus socias gestoras (T/MG Corp., Inc. y Potrero Matos, Inc.). Por lo tanto, sujeto a lo dispuesto en la Ley Núm. 208-1995, supra, el señor López Cámara, quien firmó el pagaré, es responsable bajo el instrumento ante el señor Cruz Cruz, quien es un tenedor de buena fe.
IV
Resuelto lo anterior, resta determinar si la firma del señor López Cámara obligó a la Sociedad Legal de Gananciales compuesta por él y su esposa, la señora Matos. Entiendo que sí. El Artículo 1308 del Código Civil de Puerto Rico, 31 LPRA see. 3661(1), dispone que serán carga de la Sociedad Legal de Gananciales “[t]odas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges”. Esas deudas deben servir a un interés de la familia y no pueden traer consigo un ánimo fraudulento *535 o la intención de perjudicar a uno de los cónyuges. WRC Props., Inc. v. Santana, 116 DPR 127, 135 (1985). Es decir, tiene que contraerse para beneficiar a la familia. El cónyuge o la Sociedad Legal de Bienes Gananciales que niegue responsabilidad tiene la carga de la prueba para demostrar lo contrario. Id.
En la presente controversia, el señor López Cámara firmó un pagaré para garantizar el monto por el que transó El Legado con Cruz Consulting como resultado de varios contratos de servicio otorgados entre esas partes. La deuda contraída por el señor López Cámara al firmar el pagaré fue en su carácter personal. Al negar responsabilidad, tanto personal como de la Sociedad Legal de Gananciales compuesta por él y la señora Matos, debía demostrar que la deuda no era de beneficio para la familia. WRC Props., Inc. v. Santana, supra. Los peticionarios no pusieron a este Tribunal en posición de hacer esa determinación; es decir, no derrotaron la presunción de que la deuda era beneficiosa para la familia. Id. Una mera alegación que niegue que la Sociedad Legal de Gananciales se benefició de la obligación contraída por el cónyuge no es suficiente. Por lo tanto, la firma del señor López Cámara obligó también a su sociedad ganancial.
V
Por todo lo anterior, confirmaría el dictamen del Tribunal de Apelaciones a los efectos de que el señor López Cámara no firmó el pagaré en representación de El Legado y que es responsable, junto con la Sociedad Legal de Gananciales compuesta por él y la señora Matos, del pago de la deuda en su carácter personal.