ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| FIRST PROCESSING, LLC<br><br>Parte Apelante<br><br>v.<br><br>DYNAMICS PAYMENTS LLC Y OTROS<br><br>Parte Apelada | KLAN202300684 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2021CV08426<br><br>Sobre: Cobro de Dinero- Ordinario y Otros |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de enero de 2024.

Comparece First Processing, LLC (Apelante o First Processing), mediante recurso de *Apelación*, y nos solicita que revoquemos la *Sentencia Final* que emitió el Tribunal de Primera Instancia, Sala Superior de San Juan, el 16 de agosto de 2022, notificada el mismo día. Mediante el referido dictamen, el TPI declaró ha Lugar la *Moción de Desestimación* que presentó Dynamics Payments, LLC (Dynamics Payments) y desestimó la *Demanda* por incumplimiento de contrato y daños prsentada por First Processing.

El 30 de agosto de 2022, First Processing presentó una *Moción de Reconsideración*, la cual fue denegada por el TPI el 12 de julio de 2023.

Evaluados los autos del caso a la luz del derecho aplicable, decidimos confirmar la *Sentencia Final* dictada por el tribunal apelado.

**I.**

El 27 de junio de 2014, las partes suscribieron un contrato intitulado *Independent Sales Agency Agreement* (ISA), en el cual First Processing se comprometió a referirle comerciantes a Dynamics Payments.[1] Estos, ofrecen servicios de procesamiento de data y otros servicios relacionados para poder efectuar transacciones electrónicas en establecimientos al detal, hechas por consumidores a través de tarjetas de crédito y débito ATH.

Surge del expediente que, el 14 de agosto de 2018, el Sr. Fernando Navarro (señor Navarro), accionista de First Processing, compartió una idea para promocionar los servicios de Dynamics Payments con Oriental Bank (Oriental) a través de sus contactos dentro del banco para el cual trabajó entre el 1992 y 1996. Alegan que Dynamics Payments acogió dicha idea, por lo que el señor Navarro se comunicó con el Sr. Ganesh Kumar (señor Kumar), Oficial de Operaciones de Oriental, para presentarle una oportunidad de negocios. Como resultado de lo anterior, el 12 de septiembre de 2019, el Sr. Navarro le hizo una presentación formal al Sr. Kumar en la que destacó los servicios de Dynamics Payments y la oportunidad de negocios para Oriental. Así las cosas, el 27 de enero de 2020, Oriental y Dynamics Payments suscribieron un Master Service Agreement (MSA).

El 23 de diciembre de 2021, First Processing presentó una *Demanda* en contra de Dynamics Payments.[2] En ella, exigieron el pago de una suma en exceso de $3 millones de dólares en comisiones adeudadas y no pagadas por ingresos derivados de Oriental, más intereses, gastos, costas y honorarios de abogados. Alegaron que al estos ser comerciantes para fines del ISA, y a la medida que refirieron a Dynamics Payments, tenían derecho a

---

[1] Véase, apéndice del recurso de *Apelación*, págs. 68-74.
[2] Véase, apéndice del recurso de *Apelación*, págs. 1-24.

recibir comisiones en función de los ingresos que recibía Dynamics Payments, resultantes de la relación de negocios con Oriental. Además, adujeron que negarse a efectuar su obligación de pago y a producir los informes de las comisiones a pagar, constituyeron maquinaciones insidiosas y dolosas para que First Processing no recibiera la compensación a la que tenían derecho bajo el contrato suscrito entre estos. Finalmente alegaron que lo anterior le ha causado daños irreparables y le imposibilita cuantificar la compensación adeudada bajo el contrato.

El 7 de febrero de 2022, notificada el 10 de febrero de 2022, el TPI emitió una *Sentencia Parcial* mediante la cual, a solicitud de parte, dio por desistida la demanda, sin perjuicio, en cuanto a Dynamics Payments Inc. y Dynamics Payments Corp., subsistiendo así la demanda contra Dynamics Payments, LLC.[3]

El 23 de febrero de 2022, Dynamics Payments presentó *Moción de Desestimación*, al amparo de la Regla 10.2(5) de Procedimiento Civil.[4] En su comparecencia, adujeron que las reclamaciones de First Processing constituyeron un intento de obtener un remedio que no está justificado bajo el contrato objeto de la demanda, el cual establece los términos y condiciones en cuanto a la relación entre las partes. En particular, indicaron que el pago de las comisiones estaba sujeto a que las promociones de First Processing resultaran en *merchant agreements* suscritos con terceros comerciantes, definidos como *merchants* en el contrato ISA. Además, aun cuando reconocieron que había un acuerdo suscrito con Oriental, negó que First Processing tuviera derecho a exigir comisión por el acuerdo. Expusieron que la premisa de First Processing era errónea porque Oriental era un banco patrocinador

---

[3] Véase, apéndice del recurso de *Apelación*, págs. 45-48.
[4] Véase, apéndice del recurso de *Apelación*, págs. 49-76.

(*sponsor bank*) para efectos del ISA y como tal, no podía ser considerado como comerciante *(merchant)*.

Además, articularon que, conforme al ISA, la definición de comerciante (Merchant) requería que la persona o entidad suscribiera un acuerdo con Dynamics Payments y con un banco patrocinador miembro de MasterCard y Visa o cualquier otra asociación de tarjetas. Puntualizaron que la demanda no alega que Oriental hubiera suscrito un acuerdo de comerciante (merchant agreement) con Dynamics y un miembro de MasterCard o Visa. Añadieron que Oriental era un banco patrocinador (sponsor bank) y, por tanto, no podía ser considerado como un comerciante y aun si pudiera serlo, la demanda tampoco alegó que Oriental hubiera entrado en un acuerdo con un banco patrocinador.

El 21 de marzo de 2022, First Processing presentó *Oposición a Moción de Desestimación*, en la cual alegó que conforme lo alegado en la demanda, los términos del ISA, los cuales fueron redactados por Dynamics Payments, eran vagos, confusos y ambiguos por lo que el Tribunal debía dirimir la intención de las partes al suscribir el contrato e interpretarlas a su favor.[5] Arguyó que el hecho de que existiera más de una lectura razonable del ISA bajo las circunstancias alegadas a la demanda, eran suficientes para denegar la moción de desestimación presentada por Dynamics Payments. Aseveró que, si en efecto, se determina que el ISA no aplica a un cliente como Oriental, entonces se justificaría aplicar la doctrina de enriquecimiento injusto, puesto que Dynamics Payments se enriqueció del referido de Oriental por parte de First Processing.

En respuesta, el 6 de abril de 2022, Dynamics Payments presentó *Réplica a Oposición a Moción de Desestimación*.[6] El 22 de

---

[5] Véase, apéndice del recurso de *Apelación*, págs. 80-95.
[6] Véase, apéndice del recurso de *Apelación*, págs. 109-110.

abril de 2022, First Processing presentó *Dúplica a "Réplica a Oposición de Desestimación".*[7]

El 16 de agosto de 2022, el TPI emitió una *Sentencia Final.*[8] En esta, determinó que, tomando en consideración como ciertas las alegaciones de la *Demanda,* no podía concluir que Oriental era un comerciante (merchant) para fines del ISA, según definido en la Sección A del acuerdo. Añadió que de la propia *Demanda* se desprende que First Processing no refirió a Oriental a contratar con Dynamics Payments en calidad de comerciante, sino en calidad de banco promotor *(sponsor bank).* Enfatizó que el ISA trata al *sponsor bank* como una entidad distinta al comerciante y que la comisión que Dynamics Payments acordó pagar a First Processing se computa en función de los ingresos netos recibidos por Dynamics Payments, por la prestación de servicios a los comerciantes *(merchants)* referidos por First Processing a Dynamics Payments. Por tanto, resolvió que First Processing no tenía derecho a cobrar comisión por los ingresos correspondientes a los servicios que Dynamics Payments le haya ofrecido a Oriental bajo el MSA. Concluyó, además, que el ISA claramente estipula cualquier beneficio que Dynamics Payments pudiera recibir como resultados de los referidos de First Processing, así como la compensación que First Processing puede reclamar por tales referidos y el momento en que surge ese derecho. En virtud de lo anterior, el TPI declaró con lugar la *Moción de Desestimación* presentada por Dynamics Payments y desestimó con perjuicio todas las causas de acción de la demanda presentada por First Processing.

Inconforme, el 30 de agosto de 2022, First Processing presentó *Moción de Reconsideración y Solicitando Determinaciones*

---

[7] Véase, apéndice del recurso de *Apelación,* págs. 113-118.
[8] Véase, apéndice del recurso de *Apelación,* págs. 169-181.

*Adicionales.*[9] En su comparecencia, solicitó la reconsideración de la sentencia y alegó, entre otras cosas, que el lenguaje de ISA no excluía que se podían considerar como referidos por First Processing todos los "merchant agreements" que hayan surgido del MSA que se firmó con Oriental Bank como resultado del referido de First Processing. Además, solicitó al foro primario que presentara en récord de SUMAC el Proyecto de Sentencia *ex parte* que dio pie a la *Sentencia Final*. En respuesta, el 10 de octubre de 2022, Dynamics Payments presentó *Oposición a Moción de Reconsideración.*[10] El foro primario no permitió los escritos en réplica y dúplica, y mediante orden del 12 de julio de 2023, denegó la solicitud de First Processing, de una vista argumentativa sobre moción de reconsideración, radicada el 7 de julio de 2023.[11]

El 12 de julio de 2023, notificada el mismo día, el TPI dictó una *Resolución* mediante la cual denegó la *Moción de Reconsideración y Solicitando Determinaciones Adicionales* presentada por First Processing.[12] El mismo día, el foro primario dictó una *Resolución Enmendada*, toda vez que la anterior resolución estaba incompleta y con errores en el formato.[13]

Aun inconforme con la determinación del TPI, el 7 de agosto de 2023, First Processing presentó el recurso de *Apelación* que nos ocupa y le imputa al TPI la comisión de los siguientes errores:

> **Primer Error**: Erró el TPI y violó el Debido Proceso de Ley al desestimar todas las reclamaciones de la demanda basándose en un proyecto de sentencia firmado a ciegas y al negar la solicitud para que se elevara al récord del TPI el proyecto de sentencia o, en su defecto, que se hicieran declaraciones de hechos adicionales al respecto.

> **Segundo Error**: Erró el TPI al desestimar la causa de acción por incumplimiento de contrato bajo el estándar de la Regla 10.2 (5) de Procedimiento Civil cuando existen controversias sobre la interpretación del

---

[9] Véase, apéndice del recurso de *Apelación*, págs. 182-208.
[10] Véase, apéndice del recurso de *Apelación*, págs. 209-224.
[11] Véase, apéndice del recurso de *Apelación*, pág. 255.
[12] Véase, apéndice del recurso de *Apelación*, págs. 259-261.
[13] Véase, apéndice del recurso de *Apelación*, págs. 262-264.

contrato, la intención de las partes que lo suscribieron y su aplicabilidad al supuesto de hechos alegado en la demanda.

**Tercer Error**: Erró el Tribunal al concluir que procedía desestimar la quinta reclamación por enriquecimiento injusto o *quantum meruit,* luego de haber concluido que el contrato solamente dispone sobre el pago de comisiones respecto a referidos de comerciantes (*MERCHANTS*) y que no contempla referidos de *SPONSOR BANKS* por parte de First Processing.

El 6 de septiembre de 2023, Dynamics Payments presentó *Alegato de la Parte Apelada.*

## II.

## A.

La Regla 10.2 de Procedimiento Civil, permite que un demandado en una demanda, reconvención, demanda contra coparte, o demanda contra tercero, solicite al tribunal la desestimación de las alegaciones en su contra antes de contestarla cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará. *Conde Cruz v. Resto Rodríguez,* 205 DPR 1043 (2020). A tales efectos, la referida regla lee como sigue:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) falta de jurisdicción sobre la materia;
> (2) falta de jurisdicción sobre la persona;
> (3) insuficiencia del emplazamiento;
> (4) insuficiencia del diligenciamiento del emplazamiento;
> (5) dejar de exponer una reclamación que justifique la concesión de un remedio;
> (6) dejar de acumular una parte indispensable.
>
> [...]
>
> 32 LPRA Ap. V, R. 10.2.

Por consiguiente, para disponer de una moción de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, los

tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013). La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación. *Consejo de Titulares v. Gómez Estremera et al.,* 184 DPR 407, 423 (2012); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994).

Por lo tanto, es necesario considerar si, a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida. *Pressure Vessels PR v. Empire Gas PR*, supra, pág. 505. Tampoco procede la desestimación de una demanda, si la misma es susceptible de ser enmendada. *Colón v. Lotería*, 167 DPR 625, 649 (2006). Finalmente, una moción de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil, supra, obliga al demandante que se opone a establecer por qué la reclamación que presentó es del tipo que justifica un remedio legal. *Conde Cruz v. Resto Rodríguez,* supra*.*

**III.**

En el recurso que nos ocupa, First Processing alega que el TPI incidió al desestimar todas las reclamaciones de la demanda y al alegadamente basarse en un proyecto de sentencia propuesto por Dynamics Payments, violando así su debido proceso de ley. Además, aduce que el foro primario erró al desestimar la demanda bajo la Regla 10.2 (5) de Procedimiento Civil, pues según estos, aun existen controversias sobre la interpretación del contrato entre las partes. Finalmente, añaden que la doctrina de enriquecimiento injusto o *quantum meruit* sí aplica en este caso, por tratarse de un

enriquecimiento por parte de Dynamics Payments. No le asiste la razón.

Por su parte, Dynamics Payments alega que el uso de una sentencia por parte de los tribunales en Puerto Rico ha sido avalado por el Tribunal Supremo, y que el hecho de que fue sometido *ex parte* no constituye una violación al debido proceso de ley. Además, arguyen que First Processing se apoyó de conjeturas para alegar que el contrato es ambiguo, cuando se desprende claramente del texto del ISA la intención de las partes. Finalmente, enfatizan que la doctrina de enriquecimiento injusto y *quantum meruit* solamente operan en ausencia de un contrato y que dichas doctrinas no están disponibles para reescribir los términos contractuales pactados entre First Processing y Dynamics Payments.

Por estar relacionados íntimamente entre sí, discutiremos los señalamientos de error en conjunto.

En este caso, Dynamics Payments y First Processing suscribieron un acuerdo, ISA, el cual contenía las cláusulas aquí en controversia, las cuales establecen lo siguiente:

A. Processor Services

ISA desires to participate in the payment card, gift & rewards, and cash advance services (hereinafter "Services") offered by DP and DP agrees to provide the Services to merchants located within the United States of America and the Commonwealth of PR (herein after the "Territory") **boarded by ISA and accepted pursuant to the terms set forth herein and pursuant to the terms of the merchant agreements to be entered into between DP and each individual merchant.** DP may refuse to accept any merchant and such decision shall be at the reasonable discretion of DP, and DP shall have the right, upon reasonable discretion, to terminate, suspend or otherwise close any Merchant account. A merchant shall be considered accepted once it has entered into a merchant agreement between the merchant, DP, and a member of MasterCard and Visa and any other applicable card association, and has commenced processing eligible transactions in accordance with such merchant agreement (hereinafter "Merchants").

C. DP Responsibilities:

[…]

2. On or before the last Friday of a calendar month, for revenue received for the previous months activity, and up to the effective date of termination for any reason, subject to Section F of this Agreement, DP agrees to pay ISA a compensation, equal to that set forth in Schedule A attached to this Agreement of the Monthly Net Revenue received by DP for the provisioning of the Services to the Merchants referred by ISA to DP and accepted by DP for the provisioning of such services. Monthly Net Revenue is defined as the total revenue **received from Merchants** including statements fees, equipment fees, annual fees, discount fees, transaction fees and any other fee charged to merchant, minus all interchange costs, processor costs, and any other third party costs directly related to the provisioning of the Services to the referred Merchants.

3. DP shall provide on a monthly basis a Monthly Commission Report, attached as Schedule B, to ISA of all income derived **from clients that become actual customers due to the direct efforts of ISA**, including but not limited to provide ISA, if available, access to any software, report and/or documents received or provided **from any merchant process or supplier that detail all ISA's referred Merchant,** including but not limited to computation of ISA's computation.

(Énfasis nuestro).

Luego de un examen minucioso del recurso instado, así como de la *Sentencia Final* y los documentos sometidos, concluimos que First Processing no rebatió los hechos alegados por Dynamics Payments en su demanda y sostenidos por la prueba que se acompañó a la misma.

Surge del expediente que Oriental es uno de los principales bancos comerciales en Puerto Rico que cuenta con una cantidad de clientes, como establecimientos comerciales al detal que ofrecen a los consumidores varios métodos de pago para sus transacciones de compra a través del uso de tarjetas de crédito y débito ATH.

Dynamics Payments es una compañía que ofrece servicios de procesamiento de data para poder efectuar transacciones electrónicas en los establecimientos al detal hechas por consumidores de tarjetas de crédito y débito ATH. Por lo anterior, First Processing y Dynamics Payments suscribieron el ISA, con el

fin de que First Processing le refiriera comerciantes (Merchants) a Dynamics Payments, a cambio de unas comisiones, las cuales serían calculadas en función de las ganancias obtenidas por Dynamics Payments, por los servicios de procesamiento de tarjetas de crédito, cheques, adelantos de efectivo y otros, provistos por Dynamics Payments a los referidos *Merchants.*

También surge del expediente, que ambas partes acordaron gestionar con Oriental Bank una cita para promover los servicios de Dynamics Payments. Es por esto que Oriental y Dynamics Payments firmaron un contrato intitulado "Master Services Agreement" en el cual acordaron proveer servicios de procesamiento de data y otros servicios relacionados a un término no menor de cinco años.

Como parte de sus alegaciones en la *Demanda*, First Processing asegura que ostentan un derecho, el cual surge del contrato ISA, a recibir una compensación por el referido de Oriental Bank a Dynamics Payments.

Al examinar los términos y condiciones del contrato suscrito por First Processing con Dynamics Payments, surge que las partes contratantes pactaron que First Processing recibiría comisiones bajo el ISA cuando refiriera comerciantes (Merchants). Sin embargo, los documentos demostraron que First Processing recomendó a Oriental Bank como un banco patrocinador ("sponsor bank") y no como un comerciante (merchant), según definido en el ISA. Al ser entidades completamente diferentes, no le asiste la razón a First Processing. El ISA establece que estos recibirían compensación por referidos a comerciantes al detal que realizaran transacciones a través de tarjetas de crédito o ATH, y este no es el caso de Oriental. La Sección A del ISA, anteriormente citada, establece que un comerciantes es un tercero referido por First Processing a Dynamics Payments, que suscribe un acuerdo de comerciante (merchant

agreement) con Dynamics Payments y un miembro de MasterCard o Visa.

Por lo anterior, y luego de un análisis del contrato, el ISA no contiene alguna cláusula o condición que provea para el pago en comisiones por bancos que sean patrocinadores de Dynamics Payments. Al contrario, provee una cláusula clara y no deja duda sobre la intención de los contratantes, la cual era que First Processing recibiera comisiones de los ingresos netos recibidos por Dynamics Payments por la prestación de servicios a los comerciantes referidos por First Processing a Dynamics Payments.

En fin, las determinaciones de hechos consignadas en la *Sentencia Final* hallan sustento en el contenido de los documentos presentados en el TPI para establecer que no se probaron los elementos de la causa de acción alegadas en la demanda sobre incumplimiento de contrato.

Para concluir, colegimos que el TPI actuó correctamente al desestimar las alegaciones de la demanda, es decir, incumplimiento de contrato, dolo, daños compensatorios y punitivos, interdicto permanente y en la alternativa, enriquecimiento injusto y *quantum meruit.*

**IV.**

Por los fundamentos que anteceden, confirmamos la *Sentencia Final* apelada.

**Notifíquese.**

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Cintrón Cintrón concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones