ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **JOSÉ ANTONIO CARMONA GUTIÉRREZ y otros**<br><br>Apelante-Demandantes<br><br>v.<br><br>**SAMARIA IGLESIA EVANGÉLICA, INC., y otros**<br><br>Apelado-Demandados | KLAN202400053 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Fajardo**<br><br>Civil Núm.: **NSCI201700484**<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 2 de abril de 2024.

Comparece ante nos el señor José Antonio Carmona Gutiérrez (señor Carmona Gutiérrez o apelante) y solicita que revoquemos la *Sentencia* dictada el 18 de diciembre de 2023, por el Tribunal de Primera Instancia (TPI), Sala Superior de Fajardo. En virtud del referido dictamen, el tribunal *a quo* declaró *ha lugar* las solicitudes de desestimación presentadas por la Samaria Iglesia Evangélica, Inc. (Samaria Iglesia), los miembros del Cuerpo Conciliar de Samaria, el Rev. Ángel L. Ortiz Rivera (Rev. Ortiz Rivera) y la Cooperativa de Seguros Múltiples de Puerto Rico (en conjunto, apelados). En consecuencia, desestimó la *Demanda* incoada por el apelante por falta de jurisdicción sobre la materia.

Por las consideraciones que expondremos a continuación, se confirma el pronunciamiento apelado.

### I.

Samaria Iglesia Evangélica es una corporación sin fines de lucro que sujeta a sus miembros a la autoridad de una Junta

Conciliar. Dicha Junta se encarga de encaminar a la Iglesia para la consecución de sus fines eclesiásticos.

Según surge del expediente, el 27 de octubre de 2017, el señor Carmona Gutiérrez, la señora María Rodríguez Ortiz y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Carmen Justa Gutiérrez Ramos, Joseph Lery Carmona Rodríguez y Juan José Carmona Rodríguez instaron una demanda sobre incumplimiento de deberes corporativos; debido proceso de ley; difamación y daños y perjuicios contra la Samaria Iglesia y el Rev. Ortiz Rivera, entre otras partes.

En la demanda se expuso, en síntesis, que, desde el 12 de marzo de 2014, el señor Carmona Gutiérrez fue certificado como presidente de la Junta Conciliar de Samaria por la Asamblea de miembros, posición que estaría vigente hasta febrero de 2018. Añadió que, el 15 de junio de 2015, este fue destituido de su puesto como presidente, por alegadas acusaciones y señalamientos administrativos contrarios a los cánones de sana administración establecidos por la Samaria Iglesia en su Constitución y Reglamento; aparentes violaciones a la Ley Núm. 100 de 30 de junio de 1959; así como aparentes violaciones por las cuales el Rev. Ortiz Rivera se querelló bajo la Ley Núm. 115-1991. Adujeron que, a la fecha de la demanda, Samaria Iglesia y su presidente interino no habían atendido debidamente ni resuelto el asunto de la destitución del señor Carmona Gutiérrez, según establece el reglamento aplicable. Especificaron que, el no completar el proceso iniciado en su contra, ni agotar el trámite de investigación acorde con el reglamento, constituyó crasa negligencia por parte de la Iglesia, al desentender deliberadamente sus deberes corporativos. Añadieron que el Rev. Ortiz Rivera difamó al señor Carmona Gutiérrez en pública Asamblea el 26 de febrero de 2017. En suma, solicitaron una cuantiosa compensación económica por los daños sufridos por

el señor Carmona Gutiérrez y sus familiares, así como por los estipendios dejados de percibir por concepto de lucro cesante, entre otras cosas.

Luego de varios incidentes procesales que resultan innecesarios pormenorizar, la Samaria Iglesia, los miembros del Cuerpo Conciliar de Samaria y el Rev. Ortiz Rivera incoaron una *Moción Solicitando la Desestimación y Archivo*, a través de la cual invocaron las doctrinas de abstención judicial y no intervención del Estado que emanan de la Constitución de los Estados Unidos y la de Puerto Rico. Esencialmente, argumentaron que, conforme a las mencionadas doctrinas, la demanda presentada por el señor Carmona Gutiérrez no era justiciable, por lo cual debía desestimarse. En ese sentido, esgrimieron que el foro primario no podía: (1) inmiscuirse ni hacer valoración del procedimiento interno ni de las denuncias y faltas por las cuales la Iglesia decidió disciplinar al señor Carmona Gutiérrez, sin entrar a pasar juicio sobre lo que la Iglesia considera conducta aceptable, según sus creencias y (2) penalizar económicamente a la Iglesia y miembros de su clero por ejercer funciones de naturaleza disciplinaria que emanan de su propia Constitución y reglamentos.

En particular, adujeron que la reclamación implicaba una disputa eclesiástica y actos que el Tribunal de Justicia debía abstenerse de revisar. Al respecto, expusieron que el señor Carmona Gutiérrez solicitaba que el foro judicial analizara las políticas y procedimientos internos de una iglesia y decidiera asuntos de interpretación y aplicación del derecho eclesiástico. Especificaron que las declaraciones impugnadas por el señor Carmona Gutiérrez se hicieron en el contexto de un diálogo interno de la iglesia y sobre procedimientos disciplinarios, por lo cual estas eran privilegiadas. Destacaron que la selección, expulsión y reinstalación de un ministro eran cuestiones de administración y gobierno de la iglesia

que no debían resolverse en el sistema judicial porque se trastocaría la soberanía del pueblo samaritano.

En reacción a la anterior solicitud, el señor Carmona Gutiérrez esbozó que la doctrina de la abstención judicial dependía de múltiples variables, conforme a las circunstancias particulares de los hechos. Argumentó que la aplicación de la doctrina mencionada requiere que el propio tribunal, luego de la presentación de prueba demostrativa en ese sentido, haga una determinación de si, a la luz de los hechos ante sí, la controversia requiere pasar juicio sobre cuestiones eclesiásticas. Ante ello, adujo que el tribunal no infringiría las cláusulas religiosas concernidas mientras la controversia pueda dilucidarse mediante la aplicación de principios neutrales de derecho. En particular, alegó que en el caso de autos aplicaban los principios generales de obligaciones y contratos, daños y perjuicios y las causales que dan pie a una acción de difamación. Añadió que, aun cuando una institución religiosa señalara motivos religiosos como causa de una cesantía, ello no privaba inexorablemente a un tribunal de jurisdicción de conceder un remedio. Reiteró que el caso de referencia versa sobre un asunto estrictamente de aplicación del derecho.

Analizadas todas las posturas traídas a su atención, el TPI notificó la *Sentencia* que nos ocupa. Mediante la misma, desestimó la demanda incoada por el señor Carmona Gutiérrez. En su análisis, el foro de instancia expuso que el inmiscuirse en decisiones tomadas por la organización religiosa en la solución de sus conflictos internos constituiría una intervención judicial indebida. Por tanto, determinó que no ostentaba jurisdicción sobre la materia para entrar a resolver la remoción y posterior despido como presidente de la Junta Conciliar del señor Carmona Gutiérrez. A su vez, expresó que, toda vez que el debido proceso de ley en su modalidad procesal solo se activa cuando es el Estado quien atenta contra el interés individual

de libertad o el interés propietario de una persona, el señor Carmona Gutiérrez no poseía un interés propietario sobre su puesto, pues los miembros de una corporación sin fines de lucro pertenecen a ella voluntariamente, no con el interés de hacer negocios con fines de lucro. Por último, el Tribunal de Primera Instancia concluyó que las expresiones emitidas por Rev. Ortiz Rivera en pública asamblea de la Junta Conciliar se podían considerar como información privilegiada, a tenor con lo dispuesto en la Ley de Libelo.

Por estar inconforme con la determinación del foro primario, el señor Carmona Gutiérrez comparece ante nos en recurso de apelación y plantea que el TPI cometió el siguiente error:

> El Honorable Tribunal de Instancia erró al declarar con lugar la desestimación [de] la demanda de daños y perjuicios contra la parte apelante al indicar que no tenía jurisdicción para atender la controversia por el fundamento de separación de iglesia y estado.

Con el beneficio de la comparecencia de todas las partes, estamos en posición de resolver.

**II.**

**A.**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, es uno de los vehículos procesales disponibles para que una parte solicite la desestimación de una demanda. Entre las defensas a formularse se encuentra el dejar de exponer una reclamación que justifique la concesión de un remedio.

Así, al enfrentarse a una moción de desestimación de esta naturaleza, el juzgador debe dar por buenas y ciertas todas las alegaciones fácticas delineadas en la demanda y considerarlas del modo más favorable a la parte demandante. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033 (2013). No obstante, para que ello ocurra, los hechos deben ser aseverados de forma adecuada, así como también,

expresados clara y concluyentemente y que de su faz no den margen a dudas. *Colón v. Lotería*, 167 DPR 625, 649 (2006).

Ahora bien, el promovente de la solicitud de desestimación prevalecerá si le demuestra al TPI que -aun dando por ciertos los hechos correctamente alegados- la demanda instada no expone una reclamación que justifique la concesión de un remedio. *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994).

Se desprende de lo antepuesto que, el juez o la jueza, al evaluar una solicitud de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, está obligado/a a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante. *Rivera Sanfeliz, et al. v. Jta. Dir. First Bank*, supra; *Colón v. Lotería*, supra. Así, solo cuando el TPI efectúe dicho examen y esté convencido de que la parte demandante no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar, es que procederá desestimar la demanda. *Colón Rivera et al. v. ELA*, supra, a la pág. 1049; *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013)*; Pressure Vessels P.R. v. Empire Gas P.R.*, supra.

La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación. *Consejo de Titulares v. Gómez Estremera et al*, 184 DPR 407, 423 (2012); *Pressure Vessels P.R. v. Empire Gas P.R.*, supra. Entonces, es necesario considerar si, a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida. *Íd.*

**B.**

El Artículo II, Sección 3, de la Constitución de Puerto Rico, LPRA, Tomo 1, ed. 2008, pág. 280, dispone que "[n]o se aprobará ley alguna relativa al establecimiento de cualquier religión ni se prohibirá el libre ejercicio del culto religioso. Habrá completa separación de la iglesia y el estado". Esta sección responde a la cláusula de libertad de culto y a la cláusula de establecimiento que consagra la Primera Enmienda de la Constitución de Estados Unidos. La cláusula sobre separación requiere que se reconozca una especie de jurisdicción a la iglesia, distinta y separada a la del estado, para que las actuaciones de ambas no interfieran entre sí. *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 633–634 (1997); *Asoc. Academias y Col. Cristianos v. E.L.A.*, 135 DPR 150 (1994); *Everson v. Board of Education*, 330 US 1, 16 (1947). Tanto la doctrina federal como la nuestra son cónsonas entre sí con respecto a la interpretación de la Cláusula de Separación de Iglesia y Estado y la Cláusula de Libertad de Culto que nos dirigen en torno al curso a seguir en este asunto. Ambas cláusulas deben ser consideradas por los tribunales, los cuales deben limitarse a adjudicar aquellas controversias en las cuales no hay que intervenir con cuestiones de dogmas y principios religiosos. *Amador v. Conc. Igl. Univ. De Jesucristo*, 150 DPR 571, 580 (2000).

La cláusula de libertad de culto garantiza la práctica de las creencias religiosas individuales o colectivas. Aunque la libertad de credo es absoluta, la autonomía para actuar conforme a dichas creencias tiene sus limitaciones.[1] Cuando el Estado, en la promoción de algún fin legítimo gubernamental, afecta adversamente la práctica del culto religioso, esta cláusula constitucional requiere que en algunas circunstancias se hagan

---

[1] *Cantwell v. Connecticut*, 310 US 296, 303-304 (1940).

concesiones para permitir el libre ejercicio de las creencias religiosas. *Díaz v. Colegio Nuestra Sra. Del Pilar,* 123 DPR 765, 778-779 (1989). Sin embargo, precisa resaltar que no todas las actuaciones gubernamentales que afectan la libertad de culto requieren un acomodamiento. *Íd.* Si son incidentales a una reglamentación uniforme de actividades seculares, y el interés del Estado es de tal magnitud que sustancialmente sobrepase el reclamo de inmunidad religiosa, prevalecerá el interés gubernamental. *Íd.*

Para que el Estado pueda prevalecer frente a una alegada infracción a la cláusula que prohíbe el establecimiento de cualquier religión, se requiere que la ley o conducta atacada tenga un propósito secular, que su efecto primario o principal no sea promover o inhibir la religión y, finalmente, que no conlleve la posibilidad de provocar una intromisión o interferencia (*entanglement*) excesiva del Gobierno en los asuntos religiosos. *Díaz v. Colegio Nuestra Sra. Del Pilar*, supra, págs. 780-782. Mientras los actos gubernamentales puedan justificarse en términos seculares y no constituyan una excesiva intromisión con las autoridades eclesiásticas, serán perfectamente armonizables con la Constitución. *Íd.*

Realmente lo que limita la facultad interventora de un tribunal no es el hecho de que las partes involucradas sean entidades religiosas, sino el tipo de controversia que se trae ante la consideración del foro judicial. *Amador v. Conc. Igl. Univ. De Jesucristo*, supra; *Mercado, Quilichini v. U.C.P.R.,* supra.

En armonía con lo anterior, no existe duda en cuanto a la autoridad que tiene un tribunal civil para intervenir en la interpretación de un contrato "libremente negociado y acordado" entre dos (2) entes privados. En *Díaz v. Colegio Nuestra Sra. del Pilar*, supra, el Tribunal Supremo de Puerto Rico aclaró que la

participación del Estado a través de los tribunales en disputas contractuales no es penetrante e incisiva en la operación de una institución educativa católica al punto de constituir una carga sustancial al libre ejercicio del culto ni promover el establecimiento de cualquier religión, según proscriben la Primera Enmienda de la Constitución de Estados Unidos y el Art. II, Sec. 3 de la Constitución del Estado Libre Asociado, LPRA, Tomo 1. **Por lo tanto, siempre que la dilucidación de la disputa contractual no requiera pasar juicio sobre materias de doctrina, de fe o de organización eclesiástica interna, los tribunales civiles podrán ejercer jurisdicción**. *Mercado, Quilichini v. U.C.P.R.,* supra, pág. 627. (Énfasis nuestro).

La cláusula del libre ejercicio se extiende no sólo a los individuos que practican determinada religión, sino también a las organizaciones que promueven dicho culto. Las organizaciones religiosas tienen un interés en mantener su autonomía en la organización de sus asuntos internos de manera que puedan libremente seleccionar sus líderes, definir sus propias doctrinas, resolver las disputas internas y administrar sus instituciones. *Mercado, Quilichini v. U.C.P.R.,* supra, pág. 639, citando a *Corporation of Presiding Bishop v. Amos*, 483 US 327, 341-342 (1987) (opinión concurrente del Juez Brennan).

Ahora bien, en controversias en las cuales una parte solicite intervención del foro judicial para evaluar la actuación de una Iglesia en torno al despido de uno de sus ministros, el Tribunal Supremo de los Estados Unidos explicó en *Serbian E. Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich*, 426 US 696, 713, 724-725 (Parte IV) (1976), lo siguiente:

> *For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in that sense "arbitrary" must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or else into the*

*substantive criteria by which they are supposedly to decide the ecclesiastical question. But this is exactly the inquiry that the First Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them.*                                                    *[...]*

[...]

*[T]he First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them.*

En consonancia con lo anterior, el Tribunal Supremo de los Estados Unidos expresó en *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 US 171, 195 (2012) que el propósito de la excepción ministerial no es salvaguardar la decisión de una Iglesia de despedir a un ministro solo cuando esta se basa en una razón religiosa. La excepción asegura la autoridad de la Iglesia de seleccionar y controlar quien ministra su fe, materia estrictamente eclesiástica. "*The purpose of the exception is not to safeguard a church's decision to fire a minister only when it is made for a religious reason. The exception instead ensures that the authority to select and control who will minister to the faithful—a matter "strictly ecclesiastical,"—is the church's alone.*"[2]

### III.

En su único señalamiento de error, el apelante alega que incidió el TPI al desestimar la demanda de epígrafe, al declararse sin jurisdicción sobre la materia para resolver su remoción y posterior despido como presidente de la Junta Conciliar de la Samaria Iglesia. Explica que en el caso de autos los hechos se relacionan a un

---

[2] Véase además lo resuelto en *Our Lady of Guadalupe School v. Morrissey-Berru,* 591 US ___ (2020).

contrato con la Iglesia, las obligaciones que emanan de dicho pacto, la aplicación de un reglamento a los efectos de si ejecutaron el proceso administrativo interpuesto y los daños por difamación ocasionados a su reputación sin que hubiera terminado el proceso administrativo. Añade que la aplicabilidad del reglamento es una parte importante de las condiciones de contratación y el obviarlo se traduce en un incumplimiento. Particulariza que el asunto traído ante el foro judicial en nada tiene que ver con creencias, libertad de culto, separación de Iglesia y Estado o doctrinas eclesiásticas, sino que, por el contrario, simplemente requiere la aplicación de los principios generales de los contratos para determinar si se siguió con el reglamento establecido como parte de la contratación con la Iglesia Samaria. Puntualiza que, aun cuando la referida institución señaló motivos religiosos como causa de su despido, ello no priva inexorablemente al Tribunal de jurisdicción para conceder un remedio. Por su parte, los apelados están de acuerdo con la decisión tomada por el foro *a quo*, por entender que procede la abstención judicial ante el libre culto religioso.

Tras un análisis sereno del expediente y las argumentaciones de las partes, entendemos que la decisión apelada es correcta en derecho. Veamos.

De la propia *Demanda* se desprende que el apelante refuta su destitución como presidente de la Junta Conciliar, la cual se basó en señalamientos relacionados a los cánones de sana administración establecidos por la Samaria Iglesia en su Constitución y Reglamento, así como por violaciones a otras leyes locales. Este impugna la manera en que la Iglesia manejó su cesantía, al entender que no se atendió según lo establece su propio reglamento, en contravención al debido proceso de ley y en clara desatención a sus deberes corporativos.

Según el derecho aplicable, resulta evidente que la controversia traída ante el foro judicial no es una puramente contractual como alega el apelante. Tampoco nuestra intervención constituiría una actuación estatal sobre la aplicación de las disposiciones neutrales.[3] Es patentemente una causa de acción que propone la intromisión excesiva de los tribunales con el procedimiento disciplinario ejecutado por Samaria Iglesia, entiéndase, con las normas internas de reclutamiento y posterior despido de uno de sus ministros por conductas inaceptables, conforme sus creencias. La jurisprudencia es diáfana al establecer que los tribunales no tienen jurisdicción para resolver controversias que cuestionan las decisiones de personal que toman estas instituciones religiosas. Ciertamente, la Samaria Iglesia tiene la potestad de dirigir su institución cimentada en sus principios religiosos y, por ende, el seleccionar a su propio representante ante el público, como lo es un ministro constituye una determinación interna de índole administrativa. Se trata de un asunto comprendido dentro del dogma de la Samaria Iglesia en el cual el foro judicial no debe inmiscuirse.

Recordemos que el apelante ostentaba una delicada posición dentro de la Samaria Iglesia (ministro) que manejaba una diversidad de asuntos internos de alto interés, fe, dogma y creencias religiosas. En ese sentido, colegimos que la *Sentencia* objetada es correcta en derecho y debe sostenerse, bajo los postulados de la doctrina de abstención eclesiástica.

En síntesis, según el derecho discutido y a base de los hechos particulares del caso bajo examen, procedía la desestimación de la demanda instada por el apelante contra la Samaria Iglesia, por falta de jurisdicción sobre la materia. El error señalado por el apelante

---

[3] *Mercado, Quilichini v. U.C.P.R.*, supra, pág. 646.

no se cometió. En ausencia de pasión, prejuicio o parcialidad, coincidimos con lo pronunciado por el Tribunal de Primera Instancia en su determinación. Procede confirmar la determinación apelada.

**IV.**

Por las consideraciones que preceden, confirmamos el dictamen emitido por el TPI.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones